2012 VT 10

## In re CHITTENDEN SOLID WASTE DISTRICT

[44 A.3d 753]

No. 11-072

¶ 1. February 7, 2012. This condemnation case was filed in July 1992, making it very, very old. We are currently reviewing this matter for the fourth time, asked to determine whether the superior court abused its discretion when it declined to find that there had been a material increase in the value of a sand pit owned by Hinesburg Sand & Gravel Company (HS&G) between 2000 and 2009. We conclude that the superior court did not abuse its discretion, and we affirm the court's denial of HS&G's motion to amend the final judgment.

¶ 2. The complete factual and procedural history of this case was recited in *In re Chittenden Solid Waste District*, 2007 VT 28, 182 Vt. 38, 928 A.2d 1183 (*CSWD III*). To address the claims currently before the Court, we need provide only a brief review of the facts. The Chittenden Solid Waste District filed a petition pursuant to 24 V.S.A. § 2299a to condemn HS&G's sand pit for use as a landfill. This Court affirmed the trial court's finding of necessity for the taking, *Chittenden Solid Waste Dist. v. Hinesburg Sand & Gravel Co.*, 169 Vt. 153, 154, 730 A.2d 614, 615 (1999) (*CSWD II*), and the case progressed to a trial on damages in 2003. At trial, the court instructed the jury that it should find fair market value for the sand pit as of January 1, 2000. This arbitrarily chosen date had previously been agreed upon by both parties. At the time of trial, the parties knew that CSWD would not actually enter the land until at least 2007, so HS&G could continue operating the sand pit until at least that time. The jury awarded $4 million for the property and $4.8 million for the value of the business loss. In 2005, the court granted the District's motion for judgment as a matter of law, striking the award for business loss. The court ruled that HS&G was collaterally estopped from raising issues concerning the quality and quantity of sand, that the business loss incurred was not to "business on the property" as required by law, and that "valuing the property as a landfill and then obtaining compensation for business loss associated with its use as a sand pit would constitute double recovery." *CSWD III*, 2007 VT 28, ¶ 10. The court entered a final judgment awarding HS&G $4 million in damages.

¶ 3. HS&G appealed the final judgment award, and, in 2007, this Court affirmed in

*CSWD III*, 2007 VT 28, ¶ 35. One of HS&G's arguments on appeal in *CSWD III* was that it was entitled to an updated valuation of the land, because the valuation date — January 1, 2000 — was four years old at the time of trial, and seven years old at the time of the appeal. It argued that the failure to update the property's valuation to the actual time payment was tendered was unconstitutional. The Court noted that HS&G never objected to the January 1, 2000 valuation date, and there was no record before it as to whether HS&G suffered any injury from this valuation date. We therefore rejected HS&G's argument. However, the issue raised prompted us to adopt a procedure to ensure that the landowner receives "just compensation for the value of the condemned land *at the time of the taking.*" *CSWD III*, 2007 VT 28, ¶ 32 (emphasis added) (citing *United States v. Reynolds*, 397 U.S. 14, 16 (1970)). We recognized that in cases such as this, if there is a significant time lapse between the valuation date and the actual date of taking, "the court-determined valuation may no longer suffice as just compensation." *Id.* Some procedure would therefore be needed to "updat[e] the compensation award to reflect fair market value at the time of the taking." *Id.*

¶ 4. We reviewed the procedure used in federal condemnation cases as established by *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 18-19 (1984):

> [Federal] Rule [of Civil Procedure] 60(b) empowers a federal court, upon motion of a party, to withdraw or amend a final order for "any . . . reason justifying relief from the operation of the judgment." This provision seems to us expansive enough to encompass a motion, by the owner of condemned land, to amend a condemnation award. The evidence adduced in consideration

of such a motion would be very limited. The parties would not be permitted to question the adjudicated value of the tract as of the date of its original valuation; they would be limited to the presentation of evidence and arguments on the issue of how the market value of the property altered between that date and the date on which the judgment was paid by the Government. So focused, the consideration of such a motion would be expeditious and relatively inexpensive for the parties involved.

Recognizing that Federal Rule 60 is substantially identical to its Vermont cousin, but that in Vermont, compensation is determined by a jury (not by the court as in a federal case), we adopted the *Kirby Forest* procedure by creating a two-step process:

> In the first [step], the property owner must demonstrate to the [trial] court that grounds exist to grant relief from judgment under [Vermont] Rule [of Civil Procedure] 60(b)(6): that is, that there has been a material change in the value of the property between the date of the valuation and the date of the tender of compensation. Assuming that the court finds grounds for relief, the narrow question of the increase in value can be submitted to the jury.

*CSWD III*, 2007 VT 28, ¶ 33. This procedure is at the heart of the issue currently before the Court.

¶ 5. CSWD finally took the property by tendering payment to HS&G in February 2009. HS&G then moved to amend the final order in December 2009, arguing that there was a material change in the value of its property between January

2000 and February 2009. The trial court noted that HS&G's Rule 60(b) motion was less than two pages long, and unsupported by any affidavit or evidence. The court stated that it would normally deny such an unsupported motion, but given the "history of the case" (that is, its lengthy and litigious nature), the court gave HS&G ten days to provide evidentiary support for its motion. Based on the filing, it would then determine whether an evidentiary hearing was warranted.

¶ 6. To meet its burden of showing a material change in value under the procedure set forth in *CSWD III*, HS&G next submitted an affidavit from Richard Sterner, a solid-waste facility appraiser. Sterner analyzed the property from the perspective of its income value as a landfill and concluded that it was worth $15,803,354 as of February 2009. Sterner's analysis did not include what the property's income value as a landfill would have been on January 1, 2000. CSWD argued in response that Sterner's method of valuation was entirely different from the methods used by the experts at the compensation trial — where both sides used a sales comparison approach — so the comparison of values would be of no use to the court. At trial, both parties' experts testified that the income approach is not a valid methodology for valuing landfills. HS&G's own expert at trial explicitly rejected the income approach because properties like the subject that are vacant land "do not usually generate a defined income stream."

¶ 7. HS&G did not dispute that Sterner's income valuation methodology differed from the sales comparison approach and responded by submitting a supplemental affidavit from Sterner asserting his opinion that the value of the sand pit site increased materially between 2000 and 2009 regardless of the method of appraisal. Sterner reiterated his belief that the income approach is the most

useful way to value the property but again did not include any opinion of the income value as of January 1, 2000. In its ruling on the motion to amend, the trial court held that it would not use the offered income approach to establish the property's current value because the sales comparison approach was used to establish the 2000 value of the sand pit. It noted that the values were reached in "completely different ways, with no ability to compare them." The court also rejected a letter that HS&G submitted from a purported appraiser stating that overall commercial property sales prices in Chittenden County increased seventy percent from 2000 to 2009, ruling that it was not admissible evidence as it was not sworn to, it was a draft, and the author's credentials were not established. Further, the court held that HS&G failed to establish anything about the actual valuation of the subject property. The court concluded that HS&G's submissions failed to establish, as we required in *CSWD III*, that there was a material change in the value of the property between 2000 and 2009. It therefore denied HS&G's motion to amend final judgment.

¶ 8. HS&G then filed a motion to reconsider. The court denied the motion, ruling that HS&G had again failed to submit on a timely basis sufficient evidence in support of its motion. We review decisions on Rule 60(b) motions, including questions on whether a hearing should have been held, for an abuse of discretion. *Altman v. Altman*, 169 Vt. 562, 564, 730 A.2d 583, 585 (1999) (mem.). "The burden is on the party challenging the denial to demonstrate an abuse of discretion." *Id.*

¶ 9. The crux of HS&G's argument on appeal is that, based on its Rule 60(b) motion and expert affidavits, it was entitled to a hearing on whether the value of its property materially increased from 2000 to 2009. It presents numerous cases from Vermont and other jurisdictions holding that "the court deciding the Rule

60(b) motion *must* hold a hearing to allow oral argument and, if necessary, the taking of evidence." *Goshy v. Morey*, 149 Vt. 93, 99, 539 A.2d 543, 547 (1987) (emphasis added); see also *Greater Kan. City Laborers Pension Fund v. Paramount Indus., Inc.*, 829 F.2d 644, 646 (8th Cir. 1987) (holding when a Rule 60(b) motion states a "cognizable claim," a court must hold an evidentiary hearing to determine the merits of the motion). When the grounds for a Rule 60(b) motion are "frivolous or totally lacking in merit" or "the explanations offered by a party are unreasonable," a court may deny the motion without a hearing. *Sandgate Sch. Dist. v. Cate*, 2005 VT 88, ¶ 12, 178 Vt. 625, 883 A.2d 774 (mem.). HS&G claims that it followed the procedural steps outlined in *CSWD III*, and since its motion was not frivolous or totally lacking in merit, the trial court erred in denying it without an evidentiary hearing. HS&G contends that because a jury (not the court) is to determine the actual increase in value, it need present only evidence that there was a material increase in value to proceed to the second step and argues that the affidavits submitted support a finding that an increase in value has occurred.

¶ 10. Generally, "[t]he law favors the disposition of disputes after a hearing on the merits." *Altman*, 169 Vt. at 564, 730 A.2d at 586. However, our rules and case law "plainly require that a moving party who wishes to present evidence must submit a request for a hearing with the motion or within five days thereafter, together with a statement of the evidence to be offered." *Id.* (citing V.R.C.P. 7(b)(4) and 78(b)(2)); see also Reporter's Notes — 1990 Amendment, V.R.C.P. 7 ("[T]he right to an evidentiary hearing will guarantee that every motion under Rule 60(b) will result in a hearing *if requested*." (emphasis added)). In this case, HS&G stated in its motion that it was "prepared to demonstrate to the Court that [a material change in value of the subject prop-

erty] has occurred through the expert testimony of its consultant, in accordance with the Supreme Court's decision in this matter." This statement does not suffice as a request for a hearing. In its motion for reconsideration, it similarly argued that it was entitled to a jury determination of the increase of value of its property, but it never requested a hearing on the merits of its motion.

¶ 11. Even if HS&G had properly requested a hearing, the trial court was still within its discretion to deny the Rule 60(b) motion without a hearing. A trial court has "broad discretion" in deciding a Rule 60(b) motion, *Altman*, 169 Vt. at 564, 730 A.2d at 586, and that decision "will stand on review unless the record clearly and affirmatively indicates that such discretion was withheld or otherwise abused." *Id.* at 563-64, 730 A.2d at 585 (quotation omitted). A review of the procedural history of HS&G's Rule 60(b) motion reveals the trial court was well within its discretion to deny the motion without a hearing.

¶ 12. In this case, HS&G repeatedly failed to provide the court with satisfactory support for its conclusory allegations that there had been an increase in the value of the property. HS&G submitted affidavits that provided the court with valuations reached using a methodology that differed from the valuation evidence relied upon at trial and provided no means of comparison with the value found by the jury. While the income approach is an acceptable method when used in the proper context, it can produce significantly different values for the same property than a comparable sales approach.[*]

---

[*] For instance, HS&G's valuation expert at the damages trial determined that the subject property was worth $1.8 million on January 1, 2000 under the comparable sales approach. HS&G's motion to amend relied on Sterner's valuation of $15.8 million on February 12, 2009 using the in-

In his affidavit Sterner based his opinion on three factors: (1) changes in the local solid waste market; (2) changes in the local real estate market; and (3) changes in the regional and national solid waste markets. He failed to explain how any of these factors affected or related to the subject property's value. However difficult it may be to value land such as the sand pit, the trial court must have before it some way to compare values during the relevant period. Sterner's supplemental affidavit did nothing to aid the court in determining whether there had been a material increase. The judge was still left to compare apples and oranges.

¶ 13. Finally, HS&G submitted a draft letter (not an affidavit) from a purported appraiser stating that commercial real estate prices increased seventy percent between 2000 and 2009 in Chittenden County. The court properly rejected this letter as inadmissible. Further, the letter failed to establish anything about the value of the subject property. At the close of the briefing period, therefore, HS&G failed to meet its burden of establishing that grounds existed to support the grant of relief from judgment — that is, that there had been a material increase in value such that the issue could be submitted to a jury.

¶ 14. HS&G was given multiple opportunities to proffer evidence upon which a jury could evaluate whether the property increased materially in value. HS&G repeatedly failed to provide evidentiary support for its request to amend the final judgment. The judge was well within her discretion to deny the motion without a hearing. The judge was similarly within her discretion to deny HS&G's motion for reconsideration. HS&G submitted the motion without any timely supporting evidence. Only with its late-filed reply brief did it submit an affidavit.

_____
come approach — more than an 800% increase.

¶ 15. Because HS&G did not meet its burden under *CSWD III* to show that there was a material change in the value of the property between the date of valuation and the date of the tender of compensation, the trial court did not err in denying HS&G's motion to amend the final judgment.

*Affirmed.*