2013 VT 10

## In re Charles Chandler

[67 A.3d 261]

No. 12-073

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed February 15, 2013

248

*Charles Chandler*, Pro Se, Newfane, Petitioner-Appellant.

*Tracy Kelly Shriver*, Windham County State's Attorney, Brattleboro, for Respondent-Appellee.

¶ 1. **Reiber, C.J.** Charles Chandler appeals the dismissal of his petition for post-conviction relief alleging ineffective assistance of counsel. The trial court dismissed the petition after the expiration of the twenty-nine-to-thirty-day custodial sentence imposed pursuant to the challenged conviction for impeding a public officer. We reverse and remand.

¶ 2. Following a confrontation with several fire fighters on his property, petitioner was charged in 2006 with impeding a public officer, a felony under 13 V.S.A. § 3001. A jury convicted petitioner after a three-day jury trial in November 2009. On March 30, 2010, the trial court sentenced petitioner to serve twenty-nine to thirty days in jail. Petitioner, representing himself, asked the trial court to stay his sentence pending an appeal. The court denied the stay. Petitioner hired a lawyer, who filed a written motion for a stay under Vermont Rule of Criminal Procedure 38(b). The trial court also denied this motion. Petitioner appealed the denial to this Court, and we heard arguments April 12, 2010. We reversed the denial, noting that the trial court should have taken into account the short period of incarceration in deciding whether to stay the sentence until petitioner's merits appeal could be resolved. We observed: "[W]ithout a stay, defendant will undoubtedly serve his

full prison sentence of 29 to 30 days before his appeal is heard. Indeed, as of today, defendant has already served 14 days, which is nearly half of his full sentence." *State v. Chandler*, No. 10-135, 2010 WL 7799086, at *1 (Vt. Apr. 12, 2010) (unpub. mem.), http://www.vermontjudiciary.org/d-upeo/upeo.aspx. We ordered petitioner released pending the outcome of his merits appeal, which alleged errors in the indictment, juror selection, and jury instructions. *Id.* at *2.

¶ 3. In January 2011, we affirmed petitioner's conviction. *State v. Chandler*, No. 10-135, 2011 WL 4974829, at *1 (Vt. Jan. 27, 2011) (unpub. mem.), http://www.vermontjudiciary.org/d-upeo/upeo.aspx. The trial court denied petitioner's request to modify his sentence and ordered him to begin serving the remainder starting March 16, 2011. On March 11, 2011, petitioner sought post-conviction relief under 13 V.S.A. § 7131 and extraordinary relief, alleging ineffective assistance of counsel during the trial. Meanwhile, petitioner reported to jail as ordered and served the remainder of his sentence.

¶ 4. In July 2011, the State moved to dismiss the petition for post-conviction relief, arguing that the trial court lacked jurisdiction to hear the case because petitioner was no longer in custody. Petitioner opposed the State's motion to dismiss, arguing, among other things, that the court should hear his petition because his custodial sentence had not expired when he filed. Petitioner also alleged that he would suffer serious collateral consequences as a result of the allegedly defective felony conviction, including possible restrictions on his electrician's license, an inability to travel to Canada, and a federal prohibition on his possession of a firearm. On February 9, 2012, after confirming that petitioner had completed his sentence, the trial court dismissed the petition for post-conviction relief without prejudice. The court did not specifically address petitioner's alternative request for extraordinary relief.[1]

¶ 5. In dismissing the post-conviction-relief petition, the court opined that the fact that petitioner was in custody at the time he filed his petition was insufficient "to ensure that the court has jurisdiction." The court concluded that because petitioner's sentence had expired it lacked jurisdiction unless petitioner could

---

[1] Given our disposition of this case, we do not address petitioner's request for extraordinary relief.

allege a significant collateral consequence as a result of the challenged conviction. The court found that possible restrictions on petitioner's professional licensing, travel to Canada, and possession of a firearm did not "amount to the kind of 'substantial infringements on liberty' that require the court's review of the underlying conviction." The court invited petitioner to renew his request for post-conviction relief "in the event that such a consequence may actually occur in the future." This appeal followed.

¶ 6. On appeal, petitioner largely reiterates the same claims he raised in his opposition to the State's motion to dismiss. Petitioner supplemented his appeal with allegations of more specific collateral consequences, including, among other things, potential problems with his electrician's licensure in Connecticut and New Hampshire, an inability to submit bids for federal jobs, and disqualification as a corporate officer. For the reasons outlined below, we conclude that when a petitioner moves under § 7131 to challenge a conviction *while still in custody for that challenged conviction*, the trial court possesses jurisdiction to hear the claim and the expiration of the custodial term will not render the cause moot.[2]

¶ 7. At the outset, it is incumbent upon us to clarify the appropriate terminology. Although the trial court and State frame the discussion as one involving jurisdiction, the issue presented is more properly conceived of as one of mootness. "In a case such as this where the petitioner has been released from custody but continues to suffer collateral harm because of his conviction, the questions of subject matter jurisdiction and mootness might easily be confused. These questions are importantly distinct." *Vasquez v. Ryan*, No. 11-2300, 2012 WL 959354, at *4 n.6 (E.D. Pa. Mar. 21, 2012) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

¶ 8. To resolve a petition for post-conviction relief, a court must first have jurisdiction. Once jurisdiction has been established, and throughout the pendency of the litigation, the court must also ensure that the controversy remains live. *In re Moriarty*, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991) ("A controversy must remain alive throughout the course of appellate review."). To remain a live

---

[2] Because there is no question that the trial court had jurisdiction when petitioner filed, we need not decide whether any of the alleged collateral consequences would have been sufficient to trigger jurisdiction if petitioner had moved for post-conviction relief *after his release from custody* for the challenged conviction.

controversy, the court must be capable of affording a petitioner relief.

¶ 9. As the U.S. District Court for the Eastern District of Pennsylvania observed in *Vasquez*, jurisdiction for purposes of the related federal post-conviction relief statute is measured at the time of filing. See 2012 WL 959354, at *4 n.6 ("[J]urisdiction is determined by a one-time snapshot of the petitioner's condition at the time of filing."); accord *E.C. v. Va. Dep't of Juvenile Justice*, 722 S.E.2d 827, 830 (Va. 2012) ("While intervening events may affect the nature of the relief available, they do not end or extinguish the jurisdiction of the Court."). In the usual course, a petitioner attacking a conviction under our state's post-conviction relief statute will file while incarcerated.

■ ■ ¶ 10. When, as here, a petitioner files for post-conviction relief while still in custody under a sentence imposed for the very same conviction he is challenging, the court undoubtedly has jurisdiction. See 13 V.S.A. § 7131 ("A prisoner who is in custody under sentence of a court . . . may at any time move the superior court of the county where the sentence was imposed to vacate, set aside or correct the sentence.").[3] Thus, we are left to determine whether petitioner's release from that sentence rendered his petition moot.

¶ 11. We have previously addressed a situation in which a petitioner sought to revive a potential collateral challenge to an earlier conviction by seeking post-conviction relief while in custody on a sentence enhanced by that previous conviction but not while in custody under the challenged conviction. See, e.g., *In re Collette*, 2008 VT 136, 185 Vt. 210, 969 A.2d 101 (affirming mootness dismissal of PCR challenging 12-year-old, conclusively final conviction filed while petitioner was in custody on sentence

---

[3] A petitioner does not necessarily have to be in physical custody to trigger jurisdiction under § 7131. We have for decades interpreted the statute's jurisdictional "in custody under sentence" requirement broadly, permitting challenges through post-conviction review where a convicted person alleges a substantial restraint on liberty in the form of collateral consequences. *In re Stewart*, 140 Vt. 351, 359-60, 438 A.2d 1106, 1109 (1981) ("[A] person is 'in custody' for the purposes of 13 V.S.A. § 7131 if he suffers a significant restraint on personal liberty as a direct result of the challenged Vermont conviction."). In effect, significant restraints on liberty short of incarceration may substitute for the in-custody jurisdictional requirement of the post-conviction relief statute. See *id.* It is in those cases where we have demanded a particular degree of specificity regarding the restraint and a certain sufficiency of harm.

enhanced by challenged conviction when enhanced sentence expired before review); cf. *State v. Boskind*, 174 Vt. 184, 185, 807 A.2d 358, 360 (2002) (defendant challenging earlier conviction based upon which State seeks sentencing enhancement must lodge petition in post-conviction proceeding not at sentencing). We have similarly addressed a situation in which a petitioner sought to challenge an aged conviction by filing a motion for post-conviction relief after the custodial sentence for that conviction had expired. *In re Smith*, 144 Vt. 494, 496, 479 A.2d 152, 153 (1984) (finding no jurisdiction under § 7131 when petitioner moved for relief after completing kidnapping sentence and "failed to allege or demonstrate any collateral consequence stemming from that sentence"). And we have considered situations in which it is unclear whether petitioners were ever held under custodial sentences. See, e.g., *In re LaMountain*, 170 Vt. 642, 643, 752 A.2d 24, 25 (2000) (mem.) (lifetime revocation of driver's license insufficient to satisfy § 7131 jurisdictional requirement). We have not, however, confronted the precise question presented here: whether a petitioner's post-conviction claim of ineffective assistance of counsel — filed before the expiration of the sentence for the challenged conviction — is rendered moot by his release.

■ ¶ 12. After carefully reviewing our precedent and related case law from other jurisdictions, we conclude that petitioner's situation differs markedly from those cases in which we have determined either that the trial court lacked jurisdiction because of insufficiently pleaded collateral consequences or that a trial court's inability to address a long-final conviction rendered any challenge to that conviction moot. We consequently hold that when a petitioner initiates a proceeding attacking the validity of a conviction for which he is still in custody, his release from custody will not moot the petition.

■ ¶ 13. Our approach accords with that adopted by the U.S. Supreme Court in considering the related federal habeas statutes. In the federal courts, once jurisdiction has been established in a post-conviction relief case, courts presume the existence and sufficiency of collateral consequences flowing from an allegedly faulty conviction without the need to articulate the same type of particularized harm we have in our own law required to trigger initial jurisdiction when a petitioner is no longer in custody. See, e.g., *Spencer v. Kemna*, 523 U.S. at 8. In *Kemna*, the U.S.

Supreme Court noted that federal courts "presume that a wrongful criminal conviction has continuing collateral consequences, (or, what is effectively the same, [] count collateral consequences that are remote and unlikely to occur)" to avoid mootness. *Id.* (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968)). In *Sibron*, the U.S. Supreme Court held that a "criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." 392 U.S. at 57; see also *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) ("Because of [the] disabilities or burdens [which] may flow from petitioner's conviction, he has a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.") (citation and quotation omitted).

¶ 14. In *Carafas*, the U.S. Supreme Court held that the federal courts' jurisdiction to entertain a petition for habeas corpus did not lapse upon a state convict's release from prison. 391 U.S. at 238 ("[O]nce the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application."). The U.S. Supreme Court then went on to conclude that the petitioner's motion was not moot because of "disabilities or burdens [which] *may flow*" from the challenged conviction, including the inability to engage in certain businesses, disqualification as a union official, and a prohibition on jury service, among other potentialities. *Id.* at 237-38 (emphasis added). Noting that the petitioner had diligently pursued his application since before his release from state custody, the *Carafas* Court stated:

> [Petitioner] should not be thwarted now and required to bear the consequences of [an] assertedly unlawful conviction simply because the path has been so long that he has served his sentence.

*Id.* at 240.

¶ 15. That is not, of course, to say that a petition for post-conviction relief is never moot. As we have recognized, a "case is moot if the reviewing court can no longer grant effective relief." *Moriarty*, 156 Vt. at 163, 588 A.2d at 1064 (quotation omitted). For example, in *Collette*, we held that a petitioner's challenge to a more-than-decade-old conviction used to enhance a later drunk-driving sentence became moot when the later, enhanced prison sentence expired. 2008 VT 136, ¶¶ 5-7. Our holding

in *Collette* rested on the petitioner's own failure to pursue the remedies available to him and the attendant notion that the conviction he sought later to challenge had consequently become final. See *id.* ¶ 7 ("Petitioner offers no justification why he is now entitled . . . to overturn a conviction never contested as amply provided for by law."). The petitioner in *Collette* could not challenge the predicate conviction because his failure to do so when there might have been jurisdiction rendered it conclusively final. Thus, his challenge went only to the enhancement of the later sentence based upon an aged, previously unchallenged conviction he claimed was invalid. The court could not afford the requested relief, thereby rendering his petition moot. *Id.* ¶ 8.

■ ¶ 16. This Court in *Collette* cited favorably federal precedent including *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 403 (2001), which, in denying habeas relief, relied on a federal petitioner's "choice not to seek review," thereby yielding to the state's compelling interest in the finality of the convictions it obtains.[4] *Collette*, 2008 VT 136, ¶ 7. In *Lackawanna*, the petitioner sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that he had received ineffective assistance of counsel in connection with a 1986 state conviction that adversely affected his sentence for a later crime. 532 U.S. at 397, 399. He filed his

---

[4] We frequently refer to federal case law in the interpretation of our own post-conviction relief statute because, as we have observed, our statute is in the nature of habeas corpus. See, e.g., *Collette*, 2008 VT 136, ¶¶ 6-8 (referring to federal case law); *In re Laws*, 2007 VT 54, ¶¶ 13-17, 182 Vt. 66, 928 A.2d 1210 (discussing previous application of federal precedent to elucidate appropriate standard for review of successive post-conviction petitions). We acknowledge, however, that we must be wary of relying on federal case law to limit a petitioner's rights given the fact that federal courts reviewing state sentences under 28 U.S.C. § 2254 sit in a decidedly different position. Much of the federal case law relies on the availability of precisely the same state-law procedures that an overly restrictive interpretation of our own post-conviction relief statute would limit. Cf. *Stewart*, 140 Vt. at 359, 438 A.2d at 1109 ("[T]he federal courts are now closed to numerous claims cognizable under 13 V.S.A. § 7131. Given our state's explicit commitment to the availability of post-conviction relief, it would be incongruous to construe 'in custody' so that many petitioners, perhaps illegally restrained, could not obtain review." (citations omitted)); *Boskind*, 174 Vt. at 189, 807 A.2d at 363 ("It would be anomalous, to say the least, if at the moment the United States Supreme Court was limiting access to post-conviction relief in federal forums because of confidence in state post-conviction review procedures, we chose this time to narrow the grounds upon which a collateral attack on a predicate conviction could be made in a post-conviction relief proceeding.").

federal habeas petition in September 1994. *Id.* at 399.[5] The U.S. Supreme Court concluded that a state had a compelling interest in the finality of a judgment that a petitioner had not successfully challenged directly or indirectly. *Id.* at 402-04. "[O]nce a state conviction is no longer open to direct or *collateral attack* in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid." *Id.* at 403.

¶ 17. Petitioner's situation in this case differs dramatically from that of the petitioner in *Collette* and *Lackawanna.* He is pursuing precisely the state remedy that the *Lackawanna* petitioner failed to adequately prosecute, and any interest the state may possess in the finality of a potentially infirm conviction does not attach. See 532 U.S. at 403. Nor is there any doubt that a trial court hearing a petition for post-conviction relief has the capacity to provide relief in the form of a new trial should the petitioner establish that he received ineffective assistance of counsel during his trial. See *In re Russo,* 2010 VT 16, ¶ 30, 187 Vt. 367, 991 A.2d 1073 (affirming trial court's grant of a new trial after petitioner alleged ineffective assistance of counsel in a post-conviction relief proceeding). This Court has previously held that: "post conviction petitions require consideration even where release from confinement is not one of the possible dispositions under the issues presented." *In re Bashaw,* 129 Vt. 393, 395, 278 A.2d 752, 754 (1971) (construing 13 V.S.A. § 7133). In fact, a new trial may be the only relief that a court could ever afford petitioner because a Vermont court lacks jurisdiction to directly address collateral consequences imposed by other jurisdictions. The trial court could no more order Canadian authorities to permit petitioner here to enter their country than the court in *Stewart* could directly order Colorado officials to release a defendant from custody on a Colorado sentence enhanced by earlier, challenged Vermont convictions. See *Stewart,* 140 Vt. at 357, 438 A.2d at 1108. Instead, the Vermont court had to consider on a post-conviction challenge whether to vacate petitioner's Vermont

---

[5] The *Lackawanna* petitioner had filed a petition for relief from the 1986 conviction under Pennsylvania's post-conviction relief statute in 1987, but neither the petitioner nor the state could explain why no state court had ever resolved the request. 532 U.S. at 397-98.

conviction, the elimination of which Colorado officials agreed would be taken into consideration during their own post-conviction proceeding.

■ ¶ 18. Although post-conviction relief statutes vary greatly across the country, we note that many states have arrived at the same conclusion — albeit for a wide range of reasons — that the expiration of a custodial sentence for a challenged conviction ·will not automatically moot a petitioner's request for relief. See, e.g., *Haynes v. Bronson*, 539 A.2d 592, 594 (Conn. App. Ct. 1988) ("The petitioner was in custody at the time he filed his petition for habeas corpus. The expiration of his sentence prior to the decision of the court below did not render his claims moot."); *Bennett v. State*, 289 A.2d 28, 30 (Me. 1972). ("[O]nce jurisdiction has attached in our post-conviction habeas corpus court by reason of the existence, at the time of the filing of the petition, of the necessary actual or technical physical restraint required by the statute, the unconditional release from custody during the course of the proceedings and prior to final adjudication does not deprive the courts of their jurisdiction to further entertain the issue presented."); *Sebastian v. Mahoney*, 2001 MT 88, ¶ 7, 25 P.3d 163 (mootness of habeas petition after release depends on whether court can grant effective relief); *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981) (holding moot prisoner's challenge to administrative treatment to which he was no longer subject but acknowledging as "clearly established" that claim challenging conviction is never moot unless it can be shown there will no be adverse collateral consequences); *E.C.*, 722 S.E.2d at 832-33 (juvenile's post-conviction petition not rendered moot by discharge because of collateral consequences, including registry, possible future sentence enhancements, and a prohibition on gun ownership). But see *People ex rel. Ganci v. Henderson*, 380 N.Y.S.2d 191, 192 (App. Div. 1976) ("While relator's claims may be entertained in an appropriate proceeding, a writ of habeas corpus is not available, since the relief sought would not result in his immediate discharge."); *Commonwealth v. Ahlborn*, 699 A.2d 718, 720-21 (Pa. 1997) (denying post-release relief to petitioner where statute expressly limited writ to only those defendants "currently serving a sentence"); *Kemp v. State*, 506 S.E.2d 38, 39 (W. Va. 1997) (post-physical release habeas petition moot); cf. *Tharpe v. Head*, 533 S.E.2d 368, 369-70 (Ga. 2000) (permitting challenge to expired murder conviction used to enhance later sentence and observing

"mere fact that the state sentence has been completely served should no longer be a bar to attacking it through habeas corpus even though the petition is not initially filed until after the sentence is completed") (quotation omitted); *Ex parte Oliver*, 703 S.W.2d 205, 206 (Tex. Crim. App. 1986) (applicant's claim not moot after service of sentence because he remained "subject to the possibility of constraints on his liberty due to the existence of a prior felony conviction on his record.").

¶ 19. We agree with the U.S. Supreme Court and other state courts that have concluded that a petition for post-conviction relief when timely filed will not automatically be rendered moot by release from the challenged conviction. Where relief may be granted, the court must consider the petition on the merits. To hold otherwise would effectively deprive petitioner — and all others with short terms of imprisonment — of any opportunity to challenge the effectiveness of counsel because we generally require such claims to be raised in post-conviction proceedings. See *State v. McMann*, 133 Vt. 288, 291, 336 A.2d 190, 192-93 (1975) (noting that a challenge based on ineffective assistance of counsel was most properly raised during post-conviction proceedings). In *McMann*, this Court vacated a conviction on direct appeal without reaching the defendant's claims regarding trial counsel's alleged incompetence. This Court said that even if it had not found other grounds to vacate the conviction, it would have been reluctant to consider ineffective-assistance-of-counsel claims during a direct appeal. See *id*. We said:

> We do not completely preclude the possibility that such an attack might, in some instances, be successful. But to be so, all necessary facts would have to be apparent from the record of the trial itself, an unusual circumstance. Most, if not all, such claims are properly asserted in post conviction proceedings, wherein this Court has the benefit of facts found below.

*Id*. If we are to require defendants to raise challenges based on ineffectiveness assistance of counsel in post-conviction proceedings, we must afford them adequate time to pursue them. Otherwise, any right to challenge the effectiveness of counsel would be merely illusory.

¶ 20. Indeed, earlier in petitioner's own case we declined to permit the brevity of his sentence to interfere with the exercise of

his statutory and constitutional rights. When we ordered petitioner's prison sentence stayed pending the outcome of his direct appeal, we expressly considered the fact that his period of incarceration would elapse before a resolution. *Chandler*, 2010 WL 7799086, at \*1. There is no reason to believe that a petition for post-conviction relief could be litigated any more quickly than a direct appeal. Indeed, given the complicated nature of initiating and pursuing a challenge based on ineffectiveness of counsel — including the identification of expert witnesses — it is likely to take far longer. See *In re Dunbar*, 162 Vt. 209, 212, 647 A.2d 316, 319 (1994) (noting "[d]efendant's burden is a heavy one" when alleging ineffective assistance of counsel); see also *In re Grega*, 2003 VT 77, ¶ 16, 175 Vt. 631, 833 A.2d 872 (mem.) ("Only in rare situations will ineffective assistance of counsel be presumed without expert testimony."). Leaving aside the lengthy delays that may occur organically in the trial court docket, merely assembling the necessary evidence and arranging for the requisite testimony to establish a claim of ineffective assistance of counsel is a time-consuming process that is unlikely to be completed before the expiration of many petitioners' custodial sentences. As the U.S. Supreme Court observed in *Sibron*:

> Many deep and abiding constitutional problems are encountered primarily at a level of "low visibility" in the criminal process — in the context of prosecutions for "minor" offenses which carry only short sentences.

392 U.S. at 52.

¶ 21. To deprive a defendant sentenced to a relatively short period of incarceration of the ability to challenge a conviction resulting from trial counsel's failures is particularly unfair. Presuming that the length of prisoners' sentences corresponds to the severity of their crimes, then a rule that automatically moots petitioners' requests for post-conviction relief upon the expiration of their prison terms would effectively work to punish more severely those who are less blameworthy than those with longer sentences. See Vt. Const. ch. II, § 39 ("[A]ll fines shall be proportioned to the offences."). This is particularly troubling when considering that the collateral consequences that flow from a felony conviction most often attach automatically, without regard to the relative severity of the underlying crime. For example, the federal prohibition on the possession of firearms makes no dis-

tinction on the basis of the triggering felony. See 18 U.S.C. § 922(g) ("It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by a term of imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm . . . .").

¶ 22. We have demanded that a defendant challenging an allegedly faulty conviction do so in a timely fashion or risk that it becomes conclusively valid. *Collette*, 2008 VT 136, ¶ 7 n.2. When that challenge is based on a claim of ineffective assistance of counsel, however, we have also expressed a preference for that cause to be brought in a post-conviction proceeding under 13 V.S.A. § 7131. *McMann*, 133 Vt. at 291, 336 A.2d at 193. Given these competing demands, petitioner here could not have brought his claim for ineffective assistance of counsel any earlier. Nor could he have filed it any later. Indeed, if we were to affirm such an application of the mootness doctrine to petitioner and others with similarly short sentences, there would quite simply be no appropriate time to challenge a conviction obtained in violation of a defendant's right to effective assistance of counsel. As this Court has recognized, this cannot be. *Boskind*, 174 Vt. at 192, 807 A.2d at 365 (pledging to address by "administration or rule" situation, should it arise, in which post-conviction petitioners were unable to obtain relief because enhanced sentences expired before challenge to underlying conviction could be resolved).

¶ 23. As the U.S. Supreme Court aptly observed in *Sibron*, there is no value in delaying a petitioner's ability to seek redress for a potentially illegal conviction — presumably until the occurrence of some collateral consequence so severe as to trigger jurisdiction independently. See 392 U.S. at 57. "None of the concededly imperative policies behind the constitutional rule against entertaining moot controversies would be served by a dismissal in this case. There is nothing abstract, feigned, or hypothetical about [the] appeal." *Id.* Particularly relevant to petitioner's claim of ineffective assistance of counsel here, "litigation is better conducted when the dispute is fresh and additional facts may, if necessary, be taken without a substantial risk that witnesses will die or memories fade." *Id.* As we said ourselves in *Boskind*:

> We fail to see how the defendant, judicial administration, or justice are served by a system that provides incentives

for defendants or their counsel to ignore alleged constitutional violations at the time they take place . . . . [W]e seek the benefit of ensuring that constitutional attacks on convictions are resolved as early as possible, whatever risk this may pose to an increase in judicial workload.

174 Vt. at 192, 807 A.2d at 365.

¶ 24. We may at some time in the future be called upon to revisit the matter and to delineate the precise point at which the state's interest in finality and administrative ease becomes so compelling as to render a potentially illegal conviction conclusively valid. This is surely not that time. There is no question that when, as here, a person files a petition for post-conviction relief while still in custody for the challenged conviction, a court has jurisdiction. And once the court has jurisdiction, the expiration of a petitioner's custodial sentence under the challenged conviction before the motion may be addressed through no fault of his own will not render his request moot. We therefore reverse and remand for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

¶ 25. **Dooley, J.,** concurring. I concur with the majority's mandate reversing the dismissal of petitioner's post-conviction-relief (PCR) petition but write to express my belief that this case cannot rationally be distinguished from *In re Collette*, 2008 VT 136, 185 Vt. 210, 969 A.2d 101, wherein we denied similar relief. In my view, limiting today's holding to exclude enhanced-sentence cases merely ensures that the commitment we made in *State v. Boskind*, 174 Vt. 184, 807 A.2d 358 (2002), to provide a nonillusory remedy for defendants challenging enhanced sentences based on allegedly defective predicate convictions will remain unfulfilled.

¶ 26. In *Boskind*, this Court determined that Vermont's PCR statute, 13 V.S.A. § 7131, allows defendants to attack "the constitutionality of a prior [previously unchallenged] conviction used to enhance the defendant's sentence" on a new conviction. 174 Vt. at 185, 807 A.2d at 360. In a dissent joined by Justice Johnson, I agreed that defendants could attack previously unchallenged convictions used to enhance a sentence from a later conviction, but warned that limiting such challenges to PCR actions following the imposition of the enhanced sentence provided only illusory relief because defendants would most likely have served their sentences

before being able to obtain post-conviction relief. *Id.* at 193-94, 807 A.2d at 366 (Dooley, J., dissenting).

¶ 27. Unfortunately, my prediction was fulfilled — indeed reinforced — in *Collette*, where a majority of this Court dismissed a PCR petition filed while the petitioner was still serving an enhanced sentence he claimed was based on an unlawful prior conviction. We held that the petitioner was not entitled to relief because his enhanced sentence had expired before the superior court was able to review his petition. 2008 VT 136, ¶ 1. Thus, in that case, the majority denied petitioner an opportunity to challenge the predicate conviction and consequent enhanced sentence even though he had filed his PCR petition while still serving the enhanced sentence. According to the majority in *Collette*, no relief was available that could cure any adverse collateral consequences stemming from the predicate convictions because those convictions were unassailable. *Id.* ¶ 13. Once again, I dissented with Justice Johnson joining, pointing out that we had failed to honor our commitment in *Boskind* to " 'calibrate a practical remedy' " by administration or rule if it turns out " 'defendants are serving all or most of their sentence prior to a PCR determination that the [challenged] predicate convictions used for enhancement are constitutionally infirm.' " *Id.* ¶ 20 (quoting *Boskind*, 174 Vt. at 192, 807 A.2d at 365).

¶ 28. Recognizing the controlling effect of *Collette*, the trial court in this case dismissed the PCR petition even though petitioner had filed the petition while he was still in custody. The court ruled that the adverse collateral consequences stemming from the conviction were not sufficient to retain its jurisdiction to address the petition. I agree with the majority's reversal of this decision, but the trial court was correct in concluding that *Collette* controls this case. Rather than rely upon a strained, insupportable rationale for distinguishing *Collette*, we should overrule *Collette* and enforce our commitment in *Boskind*.

¶ 29. Because the instant case involves a highly unusual fact pattern, the relief the majority offers under the reasoning employed here will in fact provide no relief in the vast majority of PCR cases. After his motion for a stay of his sentence was denied by the trial court, petitioner sought and obtained a stay pending appeal from this Court. Consequently, following our affirmance of the underlying conviction, petitioner was able to file his PCR petition before his sentence expired. This is not the typical case,

however. In most cases, the underlying sentence will not be stayed pending appeal and thus relief through PCR proceedings will not be available by the time any appeal of the underlying conviction is resolved. In short, our holding today will provide little relief for most would-be petitioners and will not ameliorate the illusory nature of the relief provided in *Boskind*.

¶ 30. The majority initially draws what appears to be a firm line that "the expiration of the custodial term will not render the cause moot" with respect to a PCR petition that is filed during the custodial term and that challenges a conviction for which he is still in custody. *Ante*, ¶ 6. I agree with this general holding and join the majority's mandate in this case. In my view, however, the majority's analysis becomes untenable when it attempts to distinguish *Collette*.

¶ 31. It is important to understand that *Collette* contains two relevant holdings: the one that the majority attempts to distinguish and the one that makes *Collette* indistinguishable. The first is, of course, the holding in *Collette* that the PCR case was moot and had to be dismissed. That is the holding the majority seeks to distinguish. I will return to that holding shortly.

¶ 32. The second holding relates to which conviction the PCR petitioner must challenge, at least initially, to obtain effective relief — the defective predicate conviction or the enhanced sentence conviction which is based on the predicate conviction. Before *Collette*, PCR petitioners attacked the predicate conviction on the basis that if the attack were successful the predicate conviction would disappear and the petitioner could then move to reopen the enhancement conviction. Under this approach, the petitioner met the PCR requirement of being "in custody under sentence" primarily by serving the enhanced sentence.

¶ 33. That a petitioner could proceed in this way was made explicit in *In re Stewart*, 140 Vt. 351, 438 A.2d 1106 (1981). Unable to attack in Vermont courts a Colorado conviction and sentence lengthened due to prior Vermont convictions, the petitioner in *Stewart* instead attacked the underlying Vermont convictions in a PCR proceeding in Vermont. Noting that the petitioner was serving an aggravated Colorado sentence based in part on the prior Vermont convictions, this Court held that petitioner was in custody under sentence for purposes of 13 V.S.A. § 7131 even though the custody was occurring in another state and the

sentence had been imposed in that state. *Id.* at 359-60, 438 A.2d at 1109.

¶ 34. Because petitioner could not directly challenge the out-of-state conviction, the Court in *Stewart* necessarily allowed a collateral challenge to the predicate Vermont convictions even though they had occurred many years earlier and had not been collaterally challenged before expiration of the Vermont sentences imposed from those convictions. In doing so, this Court responded directly to the argument that the convictions were too stale to be challenged. The State argued that petitioner's attack on the predicate convictions was barred by laches, and this Court rejected that argument. *Id.* at 360-61, 438 A.2d at 1110. We noted that § 7131 expressly provides that PCR petitions may be filed "at any time" and that this Court had already addressed the merits of PCR petitions attacking convictions that were eighteen and twenty-three years old. *Id.* at 360, 438 A.2d at 1109. We acknowledged the state's interest in the finality of criminal convictions, but pointed out that the difficulty in proof over time weighed more heavily on petitioners, who were allocated the burden of proof in PCR petitions, and that post-conviction relief is neither a vehicle for reexamining guilt or innocence nor a substitute for appeal. *Id.* at 360-61, 438 A.2d at 1109. We concluded that such "safeguards adequately protect the state's interest in finality." *Id.* at 361, 438 A.2d at 1110.

¶ 35. Without so much as a passing reference to *Stewart*, the *Collette* majority effectively overruled that case. In *Collette*, the petitioner filed a PCR petition, claiming that his 2005 conviction for driving while intoxicated, second offense (DUI-2), was the result of a 1992 DUI conviction that had been based on an uncounseled guilty plea without a proper colloquy under Rule 11 of the Vermont Rules of Criminal Procedure. A majority of this Court concluded that PCR petitioners may seek to overturn enhanced sentences but not the underlying predicate convictions, no matter what their infirmities, because those convictions are final and unassailable upon expiration of their direct sentences. See 2008 VT 136, ¶¶ 5-8. The majority in *Collette* thus reasoned that post-conviction relief was no longer available to the petitioner once the enhanced sentence expired, even though the petition had been filed before its expiration, because "the challenge here is to the enhanced sentence rather than the fact of petitioner's long-final prior DUI conviction." *Id.* ¶ 17.

¶ 36. The effect of this holding in *Collette* is that there is no relevant difference between an enhancement conviction and the conviction in the instant case for purposes of mootness. To judge that, we should compare what would happen to petitioner in this case if he prevails on his PCR petition with what would have happened to the petitioner in *Collette* if he had been allowed to go forward and then prevailed. In this case, a conclusion that petitioner had ineffective assistance of counsel in the underlying criminal case would result in striking that conviction, subject to the State's right to retry petitioner. Petitioner's victory would have no effect on his punishment, of course, because he has already served his sentence.

¶ 37. If the petitioner in *Collette* had been allowed to proceed and then prevailed, the conviction for DUI-2 would have been struck. The State could not have retried the petitioner in *Collette* for DUI-2 because of the deficiency in the predicate offense and the *Collette* holding that the predicate offense could not be overturned. He would still have been found guilty of DUI-1, but the punishment for this offense is less in multiple ways than the punishment for DUI-2. Most importantly, if the petitioner in *Collette* had instead been convicted of DUI-1 and then later was charged with a new DUI, he would have faced a significantly less severe penalty for DUI-2 than if charged with DUI-3. Compare 23 V.S.A. § 1210(c) (providing that person convicted of DUI-2 is subject to two years in prison and $1500 fine) with *id.* § 1210(d) (providing that person convicted of DUI-3 is subject to 5 years in prison and $2500 fine).

¶ 38. I recognize that allowing a PCR petitioner to proceed when there is an enhancement conviction as compared to a conviction without enhancement could have differing results, but those differences have nothing to do with mootness. The argument for allowing a petitioner in the *Collette* petitioner's circumstances to proceed is as strong, if not stronger, than any argument for allowing the petitioner in this case to proceed. Indeed, I would say it is stronger because the petitioner in *Collette* would have faced the risk of a further enhanced punishment under the statutory scheme at a later time. As I noted in my dissent in *Collette*, petitioners in such a position are potentially placed on a treadmill that prevents them from ever challenging enhancement charges before mootness occurs. *Id.* ¶ 29 (Dooley, J., dissenting).

¶ 39. The salient point on the issue of mootness is that, notwithstanding the majority's attempt to distinguish *Collette*,

both the petitioner in *Collette* and the instant petitioner are challenging convictions *"while still in custody for that challenged conviction." Ante,* ¶ 6. Whatever the theory on which each petitioner hoped to prevail, both of them challenged only one conviction — in *Collette* the DUI-2 conviction and in this case the impeding-a-public-officer conviction. Just as the petitioner in this case could not raise ineffectiveness of counsel in his criminal trial, the petitioner in *Collette* was prohibited from raising the invalidity of the predicate conviction as a defense to the DUI-2 charge.[6] See *Boskind,* 174 Vt. at 185, 807 A.2d at 360. (holding that challenges to predicate convictions used for enhancement must be made in PCR proceedings following imposition of enhanced sentence).

¶ 40. The majority suggests that an enhancement conviction can be distinguished from the conviction in this case based on the staleness of the predicate convictions in the enhancement situation. This distinction relies upon language relating to the second *Collette* holding discussed above as if it is determinative of the mootness holding. The majority's description of the *Collette* petitioner as not being "in custody under the challenged conviction" when he filed his PCR petition is not an accurate reflection of that decision.[7] *Ante,* ¶ 11. In fact, the second holding of *Collette* is that a petitioner may challenge *only the enhancement conviction* and not the predicate conviction. Thus, the staleness of the predicate

[6] The petitioner in *Collette* argued that the predicate conviction could not be used for enhancement for two reasons — petitioner had been denied his right to counsel, and the court had not complied with Rule 11 in taking his guilty plea. See 2008 VT 136, ¶ 1. The statement in the text applies to the second ground. Following *Custis v. United States,* 511 U.S. 485 (1994), this Court held in *Boskind* that defendant could raise in the enhanced sentencing proceeding that the predicate conviction was invalid because of a denial of the right to counsel in violation of *Gideon v. Wainwright,* 372 U.S. 335 (1963). Thus, if *Collette* had involved only the right-to-counsel claim, it would be accurate to state that petitioner wanted a second opportunity to make his denial-of-counsel challenge, having failed to do so when it was *first* available. See 2008 VT 136, ¶ 22 n.3 (noting that although denial-of-counsel claims "may" be raised in enhanced sentencing proceedings, "nothing in *Boskind* or the federal case law upon which it relied precludes defendants from later raising such claims in PCR proceedings"). By comparison, petitioner never had the opportunity to present his Rule 11 claim, though the *Collette* majority treated both claims the same in its mootness ruling.

[7] This inaccurate description in ¶ 11 is repeated in ¶¶ 15 and 22. The majority states in the last sentence of ¶ 15 that the *Collette* court "could not afford the requested relief, thereby rendering his petition moot." In fact, the court in *Collette* could have "afford[ed] the requested relief," as here, by allowing the case to go forward and strike the enhancement if the petitioner prevailed.

conviction is irrelevant to the application of mootness because the petitioner in this case is not challenging that conviction except to argue that it cannot be used for enhancement. Ironically, the majority relies on our promise in *Boskind* to ensure an effective remedy in enforcement cases while at the same time reaffirming a *Collette* holding that ensures that there will be no remedy, effective or otherwise, in such cases.

¶ 41. As for its mootness ruling, the majority in *Collette* applied the general principal that a case becomes moot " 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.' " *Collette*, 2008 VT 136, ¶ 4 (quoting *State v. Lee*, 2007 VT 7, ¶ 10, 181 Vt. 605, 924 A.2d 81 (mem.)). It held that "there was no relief left to be ordered" once the enhanced sentence was completed and nothing could be corrected by court order. *Id.* The same can be said of this case. Absent an alternative restraint on petitioner's liberty sufficient to support a PCR claim, this case must be considered moot under our current law because, as in *Collette*, the sentence for the only conviction that may be challenged has been fully served.[8]

¶ 42. The majority's analysis mirrors federal law creating a dichotomy between the legally cognizable injury necessary in habeas cases to exercise jurisdiction as opposed to the injury necessary to withstand mootness claims. Irrespective of whether this dichotomy makes sense, the majority's rationale is squarely blocked by the *Collette* decision. As discussed above, *Collette* disregarded controlling precedent. In addition, it turned post-conviction relief into a remedy available only for felony convictions resulting in lengthy sentences. Hence, the circumstances present grounds for overruling *Collette* without undermining our adherence to the principle of stare decisis. I would reach the majority's result via the only true path — overruling *Collette*.

¶ 43. I am authorized to state that Justice Robinson joins this concurrence.

---

[8] We have suggested in the past that restraints on liberty beyond incarceration or supervision by the Department of Corrections could qualify as "custody" under 13 V.S.A. § 7131. See, e.g., *Stewart*, 140 Vt. at 358, 438 A.2d at 1108-09 (listing various nonincarerative consequences of criminal convictions that may constrain individuals' liberty sufficient to support claims for post-conviction relief). Given the analysis embraced by the majority, we need not decide today whether, even in the absence of petitioner's brief period of incarceration, the other legal constraints arising from defendant's conviction would support a PCR petition.