**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George KASTENBAUM,
Defendant-Appellant.**

**No. 79–2277.**

United States Court of Appeals,
Fifth Circuit.

March 6, 1980.

George Kastenbaum, pro se.

Janis H. Kockritz, Criminal Division, Appellate Section, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WISDOM, GOLDBERG and HENDERSON, Circuit Judges.

WISDOM, Circuit Judge:

This case is no stranger to the Court; it has been here twice before. In one way or another all three appeals involve the effect of evidence that a dead cat was found on the doorstep of a key witness.

In February 1970 George Kastenbaum, a Miami lawyer, and Norman Jacobs, the manager of a taxicab company, were tried for conspiracy to commit extortion and attempt to commit extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. They were accused of attempting to persuade Raymond Casella, a night club tour operator, to pay them money to bribe the Miami Beach City Council for a bus transportation permit. The government presented evidence that Casella's cat, killed by a bullet through an eye, had been left on his doorstep and also that false reservations had been made for tours. The government made no attempt to connect Kastenbaum or Jacobs with the cat or with the false reservations. Jacobs was convicted on the conspiracy count. Kastenbaum was convicted on both counts. He was sentenced to five years imprisonment for the conspiracy count and three years imprisonment for the attempt count. The sentences were to run concurrently.

On appeal, Kastenbaum and Jacobs argued that the trial court should have allowed counsel to discuss during their final arguments whether Casella feared the defendants. The district judge had considered a victim's fear unnecessary for convictions under the Hobbs Act. We affirmed, holding that fear was not an element of a conspiracy offense; the government need prove only that the defendants had conspired "to extort money or property from Casella by the use of 'actual or threatened . . . fear'" and that they did "some acts" in furtherance of that object. We held that ample evidence demonstrated the existence of the conspiracy. The concurrent sentence doctrine made review of the attempt conviction unnecessary. *United States v. Jacobs*, 5 Cir. 1971, 451 F.2d 530, 540, *cert. denied*, 1972, 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231.

On March 24, 1977, before the five year sentence ended, Kastenbaum filed a motion under 28 U.S.C. § 2255 to vacate the sentence, alleging that a jurisdictional element of the Hobbs Act had not been satisfied and that his attorneys were impermissibly restricted in their summation. The district judge, he contended, had threatened the attorneys with contempt if they argued the presence or absence of fear in the intended victim.

The district judge denied the § 2255 motion without a hearing. On appeal we affirmed denial on the jurisdictional argument, but remanded for a hearing to determine whether the attorneys were "reasonably led . . . to refrain from arguing his lack of involvement with the acts of intimidation because they feared being cited for criminal contempt". *Kastenbaum v. United States*, 5 Cir. 1979, 588 F.2d 138, 140.

At the hearing the district judge stated that he did not remember making the contempt warning, but that he might have done so:

[I]f at [the charge] conference I told those lawyers that they were prohibited from arguing to the jury that there was no fear in the mind of the alleged victim and if one of them attempted to do so, I was going to send him to jail, you may rest assured that if I told them that, I meant it. Because after I instructed them in the charge conference not to argue something to the jury and if they came in here and caused a mistrial by arguing it, I would have put him in jail for contempt as sure as anything in the world.

At the conclusion of the hearing he said that he "very probably did" make such a threat.[1]

One of Kastenbaum's attorneys, Robert Beckham, testified that the trial judge made the threat:

> Q. There is absolutely no question whatsoever in your mind, from your recollection, the Court threatened to incarcerate you if you argued fear or the facts relating to fear in the instant matter?
>
> A. Mr. Kastenbaum, the Court's admonition was directed to all counsel in the room. It wasn't directed, I don't believe, at either Mr. Block individually or Mr. Kogen individually or me individually.
>
> But the comment was directed to the effect that if anybody from the defense argued the absence of fear in Mr. Casella, that would involve jail.

Affidavits by two other defense attorneys supported Beckham. Irwin Block stated:

> . . . During the charge conference held in Chambers by counsel and all parties and the Court, some statement was made by the Court which the undersigned construed as an instruction from the Court not to argue that the victim, Raymond Casella, was not in fear as a result of the purported actions of the defendants, and which statement by the Court further led the undersigned to believe that if he did argue anything about the alleged victim not being in fear, the undersigned would be incarcerated for disregarding the court's order and instruction.

Max Kogen stated:

> . . . Judge Mehrtens [the trial judge] . . . clearly indicated that if any attorney in summation attempted to argue fear of any kind on the part of the alleged victim, he would be sent to jail; further, that the Judge's tone was strong and crystal clear regarding this matter.

The government admitted, for the purpose of argument, that these remarks were made but contended that the defense attorneys could not have understood the trial judge to mean that they were forbidden from arguing whether any evidence connected Kastenbaum with the acts. Unfortunately, the final arguments of counsel at trial were not transcribed, and no evidence exists concerning what was said. Beckham's testimony at the hearing, however, supports the view that the defense attorneys reasonably believed that the threat prevented discussion of the absence of any connection between Kastenbaum and these occurrences. See his testimony set forth in the margin of this opinion.[2] Despite this

---

1. The trial judge stated:

> * * * * * *
>
> Gentlemen, with respect to the alleged statements, I will have to say, in all honesty, that I have no recollection of whether I made them or not.
>
> As this record indicates, I do a lot of talking. And I very probably did. Because in order to ensure not having a mistrial, which would have been the result of the whole thing, I very probably told the lawyers that they were not permitted to argue fear in the alleged victim to the jury, and if one of them attempted to do so, I was going to hold them in contempt and put them in jail.
>
> And if I said it, I very probably meant it. And although those lawyers are fine lawyers and very good friends of mine, I would have put Mr. Kogen or Mr. Block or Mr. Beckham in jail just as quick as anything in the world, because I would have called the marshal out after the trial was over and we would have

proceeded with a direct contempt proceeding.

> * * * * * *

2. But in any event, I can't swear I didn't address those facts. I don't believe I did, because I can't recall any relevancy they would have had other than on the issue of fear.

> * * * * * *
>
> Q. Okay, sir. The Judge didn't tell you that you could not argue intent on the part of the defendant, did he?
>
> A. Not that I recall, sir, no, sir. The only prohibition had to do with fear.
>
> Q. Okay. And you could have argued that the defendant didn't do the things that the Government presented, like killing the cat and certain other acts that the Government alleged?
>
> A. Do you mean and still keep within the confines of his ruling? I doubt that. I really don't know.
>
> Q. How about that the defendant never intended to—
>
> A. —kill the cat?

evidence, the trial judge said, "Frankly, I am not of the opinion that because of that one issue any of Mr. Kastenbaum's constitutional rights were violated."

■ It is apparent that the trial judge misunderstood or ignored our directive to make a finding whether fear of criminal contempt "reasonably led Kastenbaum's attorneys to refrain from arguing his lack of involvement with the acts of intimidation". 588 F.2d at 140. "The case may be remanded if the trial court has made no findings or insufficient findings, though this is not mandatory, and the appellate court may proceed to decision if it feels able to do so." C. Wright, 2 Federal Practice and Procedure § 600 at 638 (1969). We choose to proceed.

■ "The defendant has the burden of sustaining his contentions on a § 2255 motion by a preponderance of the evidence." *Id.* at 637; *see Voltz v. United States*, 5 Cir. 1952, 196 F.2d 298, 299, *cert. denied*, 1952, 344 U.S. 859, 73 S.Ct. 99, 97 L.Ed. 667. Here testimony by one of Kastenbaum's attorneys, affidavits from two others, and the absence of controverting evidence by the trial judge or anyone else lead us to conclude that the threat was made. Testimony from Beckham suggests that he felt inhibited by the threat and "doubt[s]" whether he could have discussed whether the defendant committed these acts and still kept within the judge's ruling. Statements by Beckham, Kastenbaum, and the

trial judge all confirm that counsel could reasonably fear giving any impression of violating the trial judge's ruling.

■ If during final argument Kastenbaum's attorneys made no reference to the killing of Casella's cat and to the false tour reservations, the jury may reasonably have believed that Kastenbaum was responsible despite the absence of any evidence connecting him with these acts. The trial judge's threat may reasonably have caused the jury to be prejudiced against Kastenbaum. A § 2255 motion addresses such questions of fairness. "The guilt or innocence of the defendant is not in issue on a § 2255 proceeding, but rather the validity and the fairness of the proceedings against him." C. Wright, 2 Federal Practice and Procedure § 593 at 592 (1969). Because we have no transcript of the final arguments, we cannot know what occurred; nevertheless, the defendant has met his burden of showing that his trial was unfair. We order a new trial.

The judgment of the district court on the motion to vacate is REVERSED, the conviction is set aside as to Kastenbaum, and the case is REMANDED for a new trial within a reasonable time from the date of the issuance of the mandate.

HENDERSON, Circuit Judge, dissenting.

In spite of a criminal trial, a § 2255 hearing and two appeals, it now appears

---

Q. —to do any of those facts that the Government alleged?

A. I don't quite follow you. There was evidence of things that happened. And as Judge Mehrtens indicated earlier, his proclivity for meaning what he said is not something that has just come about lately. He has always been known as a judge who stands where he stands.

Most lawyers don't like to get too close to the line.

Q. Did you also restrict your arguments regarding some of the facts in the case on any theory whatsoever?

A. Mr. Kastenbaum, because I was staying away from the elements of fear, obviously there were some facts that I didn't address, yes, sir.

In other words, some of the things that had gone into the trial, maybe the first day or two into evidence, because fear now, under the Court's ruling, was not to be addressed. And those facts became meaningless, as it were, meaningless under the ruling.

Q. Can you recall what facts you did not discuss in summing up to the jury? If you can, I know it's eight or nine or ten years ago. I don't recall myself.

A. Mr. Kastenbaum, I cannot specifically say in answer to that. I do recall, of course, certain evidence that had been admitted concerning—in other words, there were—in other words, there were some things that went on in Mr. Casella's home, et cetera allegedly, I think when they were introduced to begin with, it was to show the presence of fear or whatever.

that this dead cat will finally be resurrected.

There is no doubt from the evidence adduced at the § 2255 hearing that the trial judge, in an unreported part of the charge conference,[1] warned the appellant's attorneys to avoid any argument concerning the fear of the victim. As found by the majority, all of the evidence presented preponderates to this conclusion. Assuming these facts to be true, I dissent because I cannot agree with the majority view that the judge's order "reasonably led Kastenbaum's attorneys to refrain from arguing his lack of involvement with the acts of intimidation because they feared being cited for criminal contempt," 588 F.2d at 140.

A panel of this court has already determined that the trial judge properly ordered Kastenbaum's attorneys to refrain from arguing to the jury about the victim's fear. 451 F.2d at 540, 588 F.2d at 139. At the hearing on the motion to vacate sentence, the judge said, "[I]f any one of [the defense attorneys] had gotten up there and said, 'Now, ladies and gentlemen of the jury, you have heard some testimony about a dead cat. I submit to you that there isn't a bit of evidence connecting that with Mr. Kastenbaum,' I wouldn't have said a word. . . Which would be a proper argument to make, incidentally." Transcript at 28.

There is little evidence that any of the defense attorneys understood the judge to tell them that they could not refer to the failure of the government to connect the defendants and the acts of intimidation.[2]

In any case, I cannot agree that the defense attorneys could have "reasonably" understood the court's instruction that they not comment on the victim's state of mind to mean they could not discuss the connection between the defendants and the acts of intimidation; this argument relates to the defendant's intent, not the victim's fear. Apparently the question of fear in the intended victim was mentioned more than once during the conferences between counsel and the court.[3] It was the obvious purpose of the judge to make clear his ruling so as to avoid another trial. Unfortunately, it appears that all his efforts were unsuccessful. If there was any confusion, "it would have been a simple matter indeed to request clarification," *Jim Walter Resources v. International Union, United Mine Workers of America*, 609 F.2d 165, 168 (5th Cir. 1980). For whatever reason, the defendant's attorneys chose not to follow that course, but this does not require us to vacate the sentence.

---

1. The affidavits of the three defense attorneys, as well as testimony at the § 2255 hearing, indicate that any warning to counsel took place at the charge conference. Thus, even if the threat had the effect the majority finds it to have had, it was not made in front of the jury, and the statement that "[T]he trial judge's threat might well have caused the jury to be prejudiced against Kastenbaum" is misleading, even if it means only that Kastenbaum was harmed because he was unable to make certain arguments. In the previous appeal of this case, we stated that the decision on the direct appeal upheld the trial court's order not to mention the victim's fear in jury arguments. 588 F.2d at 139.

2. The only evidence is quoted in footnote 2, *ante*: Question by the U. S. Attorney: "And you could have argued that the defendant didn't do the things that the Government presented, like killing the cat and certain other acts that the Government alleged? A. Do you mean and still keep within the confines of his ruling? I doubt that. I really don't know."

3. The transcript of the charge conference is not available, but the United States indicates that the judge focused on the irrelevance of the victim's state of mind in a prosecution for attempted extortion, and stated that the defendant's state of mind was in issue. Brief of the United States at 6 n. 8, quoting conference transcript at 47.