## In re Gordon A. Stewart

[438 A.2d 1106]

No. 405-80

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed November 3, 1981

352

*Andrew B. Crane,* Defender General, *Stephen W. Gould,* and *Gene Condon,* Law Clerk (On the Brief), Montpelier, for Petitioner.

*John J. Easton, Jr.,* Attorney General, and *Susan R. Harritt,* Assistant Attorney General, Montpelier, for Respondent.

**Hill, J.** The appellant, Gordon Stewart, filed a petition for

post-conviction relief in the Windsor Superior Court. The lower court dismissed the petition for lack of jurisdiction. We reverse.

## I.

The appellant was convicted of seven felonies in Vermont between 1960 and 1969. He completed serving all of the sentences for those convictions in 1971, and was released from Vermont parole in 1974. In 1973 the appellant was convicted of a narcotics charge in Colorado. In 1976, he was again convicted in Colorado of a narcotics charge. The Colorado court imposed a thirteen to fifteen-year sentence which he is now serving in Colorado.

In 1977 the appellant filed a challenge to his Vermont convictions on a variety of state and federal constitutional grounds. On the State's motion to dismiss, the trial court held that 12 V.S.A. § 3952 provided habeas jurisdiction over the complaint. In response to the State's motion for reconsideration, the lower court reversed itself, and dismissed the appellant's petition. It held that habeas was unavailable, as the appellant would not be entitled to immediate release from Colorado prison upon vacation of the Vermont convictions, noting that a Vermont habeas writ would be unenforceable in Colorado. The court also denied jurisdiction under 13 V.S.A. § 7131, holding that the post-conviction relief statute only afforded relief to individuals incarcerated under Vermont sentences. Finally, the trial court said that laches provided an alternative ground for dismissal of the petition.

The parties to this appeal stipulated that the Vermont convictions directly affected Mr. Stewart's sentencing by causing the Colorado court to impose a harsher sentence and precluding the appellant from applying for parole. They also stipulated that the appellant would be resentenced if the Vermont convictions are vacated.

Although the appellant now concedes that habeas is unavailable as a jurisdictional basis for his petition, he urges us to reverse the lower court on two alternative grounds. First, he asserts that he meets the jurisdictional requirements of 13 V.S.A. § 7131. Second, he argues that coram nobis is available

to govern his petition.[1] The appellant also challenges the applicability of laches to his petition.

## II.

 The Vermont Legislature first provided a remedy for illegal restraint or imprisonment in 1787. See 1787 Vermont Statutes at 31–32 (now codified at 12 V.S.A. § 3951). Today the primary mechanism for post-conviction relief is 13 V.S.A. § 7131, which is a "special statutory remedy in the nature of *habeas corpus.*" *In re Clark,* 127 Vt. 555, 557, 255 A.2d 178, 180 (1969). It is patterned after the federal post-conviction relief statute, 28 U.S.C. § 2255 (1976). See *Shequin* v. *Smith,* 129 Vt. 578, 581, 285 A.2d 708, 710 (1971). The statute permits a collateral attack upon Vermont convictions or sentences which are defective under the Constitution, statutory law, or "otherwise subject to collateral attack." 13 V.S.A. § 7131.

 The jurisdictional limitation on this broad remedy is that a petitioner must be "in custody" to mount an attack. This appeal presents the question of what conditions constitute "in custody" and are therefore remediable under the post-conviction statute.

 Courts have divided over this issue. Some states have adopted a restrictive view of "in custody," and have limited post-conviction review to individuals actually incarcerated in the forum state's prisons. See *Jessen* v. *State,* 95 Wis. 2d 207, 211–12, 290 N.W.2d 685, 687 (1980); *Lalla* v. *State,* 463 S.W.2d 797, 801 (Mo. 1971); *Johnson* v. *State,* 4 Kan. App. 2d 573, 608 P.2d 1044, 1045 (1980). Other jurisdictions, faced with cases similar to the appellant's, have held that the impact of a prior conviction on a sentence satisfies the "in custody" requirement, and subjects the prior conviction to collateral attack. See *Smith* v. *State,* 94 Idaho 469, 471, 491 P.2d 733, 734–35 (1971); *State v. Reynolds,* 238 So. 2d 598, 600 (Fla. 1970); *State* v. *Urbano,* 105 Ariz. 13, 14, 457 P.2d 343, 344

---

[1] The State argues that coram nobis has been abolished by V.R.C.P. 60(b). Because of our resolution of the 13 V.S.A. § 7131 question, we do not reach the coram nobis issue. Nor do we address the substantive merits of the appellant's petition.

(1969) (en banc), *cert. denied,* 397 U.S. 948 (1970); *Green* v. *State,* 237 A.2d 409, 411 (Me. 1968). Cf. *United States* v. *Condit,* 621 F.2d 1096, 1097–98 (10th Cir. 1980) (federal prisoner in California may use 28 U.S.C. § 2255 to attack Oklahoma sentence which was predicate for parole revocation by California court).

■ Like its counterpart in the federal system, our post-conviction relief has expanded in two distinct and important dimensions. First, the species of errors subject to collateral attack have increased. Habeas corpus formerly protected against only "jurisdictional" defects in criminal judgments. See, e.g., *In re Greenough,* 116 Vt. 277, 282, 75 A.2d 569, 573 (1950); *Developments in the Law—Federal Habeas Corpus,* 83 Harv. L. Rev. 1038, 1044–55 (1970). Relief is now available for a variety of errors that affect the validity of guilty verdicts. See *In re Dussault,* 128 Vt. 135, 136–37, 259 A.2d 776, 777 (1969); *In re Provencher,* 127 Vt. 558, 560, 255 A.2d 180, 182 (1969). Second, the "Great Writ" has expanded to encompass "a wide range [or relief], . . . including remedies short of full release, [and] the scope of review itself is likewise broad." *Sherwin* v. *Hogan,* 136 Vt. 606, 608, 401 A.2d 895, 896 (1979).

■■ The expansion of habeas relief has largely occurred under the guise of modern post-conviction relief statutes, such as 13 V.S.A. § 7131 and 28 U.S.C. § 2255 (1976). These statutes were enacted to simplify the often cumbersome procedures associated with habeas corpus. Section 2255 was designed to distribute the federal habeas caseload evenly among the federal courts and to provide a more convenient forum for obtaining relevant records and witnesses. The statute achieved these purposes by vesting jurisdiction in the sentencing district, rather than the district of incarceration. See *United States* v. *Hayman,* 342 U.S. 205, 210–19 (1952); *Developments, supra,* 83 Harv. L. Rev. at 1062. Similarly, 13 V.S.A. § 7131 apportioned Vermont's habeas cases among the trial courts. See generally *In re Shuttle,* 127 Vt. 602, 603, 256 A.2d 28, 28 (1969). Thus, the modern statutes, including 13 V.S.A. § 7131, are venue devices, and are not designed to affect the availability of habeas relief. See *United States* v. *Addonizio,*

442 U.S. 178, 185 (1979); *Davis* v. *United States*, 417 U.S. 333, 343–44 (1974).

■ The State argues that the "in custody" phrase should be literally construed to bar relief in this case. This contention fails to account for the limited venue functions of modern post-conviction relief statutes. The statute mandates that an individual be "in custody under sentence of a court," 13 V.S.A. § 7131; "custody in Vermont" is not mentioned. Furthermore, as Justice Stewart wrote for the United States Supreme Court concerning the federal statute: "microscopic analysis of § 2255 surely shows that the statutory language is somewhat lacking in precision." *Davis* v. *United States, supra,* 417 U.S. at 343. Thus the specific language of 13 V.S.A. § 7131 sheds little light on the jurisdictional requirements of "in custody."

■ The State's position is further undermined by Vermont precedent. Our decisions have explicitly extended "in custody" beyond incarceration. This Court has previously held that: "post conviction petitions require consideration even where release from confinement is not one of the possible dispositions under the issues presented." *In re Bashaw,* 129 Vt. 393, 395, 278 A.2d 752, 754 (1971) (construing 13 V.S.A. § 7131). On two occasions we have stated that an individual need not be incarcerated to satisfy the "in custody" requirement of 13 V.S.A. § 7131. In *State* v. *McMann,* 133 Vt. 288, 336 A.2d 190 (1975), the Court said in dicta:

> Nor would [post-conviction] relief be precluded, we feel, by the requirement of 13 V.S.A. § 7131 that the respondent be "in custody." His "permanent furlough" to New Hampshire authorities, a form of parole, would, since it involves a curtailment of liberty, constitute a form of "custody."

*Id.* at 291–92, 336 A.2d at 193.

In *Magoon* v. *Smith,* 130 Vt. 603, 298 A.2d 820 (1972), we reached the merits of an attack on a murder conviction by a parolee. The Court noted that habeas jurisdiction was unavailable, as the petitioner was not then incarcerated. *Id.* at 603–04, 298 A.2d at 821. The Court then held:

> [B]ecause he is in at least technical custody under sentence of a court, we will treat the matter as if the plaintiff had brought his petition under the postconviction relief statute, which is, substantively, a special statutory remedy in the nature of *habeas corpus,* applicable to those "in custody under sentence of a court."

*Id.* at 604, 298 A.2d at 821. Thus, our decisions have explicitly extended "in custody" beyond incarceration.

Our prior interpretations of "in custody" are in harmony with the federal courts' extension of post-conviction and habeas relief to individuals attacking consecutive sentences not yet served, *Peyton* v. *Rowe,* 391 U.S. 54, 64–67 (1968); to federal parolees, *United States* v. *Kriz,* 621 F.2d 306, 308 n.2 (8th Cir. 1980); and, to parolees who were released during the pendency of their petitions. *Addison* v. *United States,* 589 F.2d 252, 252–53 (5th Cir. 1979). These extensions of "in custody" have enabled post-conviction relief to respond to the restrictions on individual liberty imposed by the many collateral consequences of criminal convictions. See *Granville* v. *United States,* 613 F.2d 125, 126 (5th Cir. 1980). See generally *Carafas* v. *LaVallee,* 391 U.S. 234, 237–38 (1968). Convictions may cause the revocation of a professional license. See *In re Capriola,* 134 Vt. 548, 549, 367 A.2d 689, 690 (1976). Convictions, albeit constitutionally infirm, may form the predicate for criminal liability under federal law prohibiting gun possession by felons. *Lewis* v. *United States,* 445 U.S. 55, 66–67 (1980). But cf. *United States* v. *Tucker,* 404 U.S. 443, 448–49 (1972) (sentence enhanced by convictions obtained in violation of *Gideon* rule is subject to collateral attack). A state conviction subjects an alien to deportation. See *Ocon-Perez* v. *INS,* 550 F.2d 1153, 1154 (9th Cir. 1977). As in this case, a record of convictions may aggravate sentencing, see 13 V.S.A. § 11, or deny an individual probation or parole opportunities. A prior conviction can also contribute to the imposition of capital punishment in some states. See *Davis* v. *State,* 600 S.W.2d 182, 183 (Mo. Ct. App. 1980).[2] See also Note, *The Constitutionality*

---

[2] The *Davis* case involved an Oklahoma inmate, under sentence of death, who sought to challenge a Missouri conviction that affected his death sentence. The Missouri court relied on that state's strict definition of "in custody," and denied jurisdiction. See *id.* at 183.

*of the Mandatory Death Penalty for Life-Term Prisoners Who Murder,* 55 N.Y.U. L. Rev. 636, 639 n.19 (1980).

██ ██ Although states may impose these collateral consequences, if the underlying convictions are tainted individual liberty is restrained without justification. The purpose of the "Great Writ," and therefore, the purpose of post-conviction relief, is to guard against illegal restraints on liberty. Substantial infringements on liberty, although short of incarceration, trigger this interest. Consequently, the scope of post-conviction relief historically has been revised to protect individual liberty. Justice Black expressed this view for a unanimous Supreme Court: "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." *Jones* v. *Cunningham,* 371 U.S. 236, 240 (1963). See also *In re Huard,* 125 Vt. 189, 194–95, 212 A.2d 640, 645 (1965).

Our concern with the liberty interests protected by post-conviction relief is heightened by the unique facts of this case. In another jurisdiction, the appellant has suffered adverse consequences from Vermont convictions. If these consequences had been imposed by a Vermont court, 13 V.S.A. § 7131 would certainly provide jurisdiction. Consequently, this case involves the availability of Vermont post-conviction relief and whether it should depend upon the petitioner's geographic location. Other states need not allow review, as the federal constitution does not require states to provide post-conviction review. *Williams* v. *State,* 640 F.2d 140, 143 (8th Cir.), *cert. denied,* 451 U.S. 990 (1981). Furthermore, the federal courts are now closed to numerous claims cognizable under 13 V.S.A. § 7131. See *Stone* v. *Powell,* 428 U.S. 465, 481–82 (1976). Given our state's explicit commitment to the availability of post-conviction relief, see 12 V.S.A. § 3951, it would be incongruous to construe "in custody" so that many petitioners, perhaps illegally restrained, could not obtain review.

██ For the foregoing reasons, we must reject a narrow construction of "in custody." We therefore hold that a person is "in custody" for the purposes of 13 V.S.A. § 7131

if he suffers a significant restraint on personal liberty as a direct result of the challenged Vermont conviction. See *United States v. Condit, supra,* 621 F.2d at 1098. Every collateral consequence associated with a conviction will not trigger jurisdiction. A conviction may deny some privileges so trivial that the "in custody" requirement is not satisfied. Yet, an aggravated sentence, without the possibility of probation, surely strikes at the liberty interests 13 V.S.A. § 7131 is designed to protect. The State concedes that the appellant is suffering these consequences as a direct result of his Vermont convictions. We conclude that the appellant is "in custody" for the purposes of 13 V.S.A. § 7131.

## III.

 As an alternative ground for dismissal, the trial court held that the doctrine of laches barred the appellant's claim. This Court has never applied laches to either post-conviction relief or habeas petitions. This Court has previously addressed the merits of post-conviction relief attacks on an eighteen-year-old conviction, *Magoon* v. *Smith, supra,* 130 Vt. at 603–04, 298 A.2d at 821, and on a twenty-three-year-old conviction. *In re Murray,* 131 Vt. 4, 5, 298 A.2d 835, 836 (1972). Furthermore, 13 V.S.A. § 7131 specifically provides that a petition may be filed "at any time." See *In re McNair,* — Mont. —, —, 615 P.2d 916, 917 (1980) (holding that identical language in Montana post-conviction relief statute bars application of laches). Consequently, we decline to apply the doctrine of laches to 13 V.S.A. § 7131 actions. Accord, *State* v. *Urbano, supra,* 105 Ariz. at 14, 457 P.2d at 344; *Miller* v. *State,* 603 S.W.2d 29, 30 (Mo. Ct. App. 1980).

 We recognize the significant state interest in the finality of criminal judgments. See *United States* v. *Gross,* 614 F.2d 365, 368 (3d Cir.), *cert. denied,* 447 U.S. 925 (1980); Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U. Chi. L. Rev. 142, 146–51 (1970). Delay in requesting post-conviction relief also impairs a court's ability to judge the validity of the attacked conviction, as witnesses and records may be unavailable. Yet, a petitioner's

tardiness penalizes him more severely.[3] Delay does not alter the allocation of the burden of proof. The moving party must establish the infirmity of the conviction by a preponderance of the evidence. *In re Battick,* 137 Vt. 408, 410, 406 A.2d 381, 382 (1979); *In re Fuller,* 135 Vt. 575, 580, 381 A.2d 1056, 1059 (1977). Post-conviction relief is not a vehicle for reexamining guilt or innocence, see *United States* v. *Kastenbaum,* 613 F.2d 86, 89 (5th Cir. 1980), but is designed to correct fundamental errors. See *United States* v. *Addonizio, supra,* 442 U.S. at 184–85. Post-conviction relief is not a substitute for appeal. Absent exigent circumstances, a matter adversely decided on direct appeal cannot be relitigated, and collateral attack is barred if the movant deliberately bypassed the issue on appeal. See *Chin* v. *United States,* 622 F.2d 1090, 1092–93 (2d Cir. 1980). See also *Berard* v. *Moeykens,* 132 Vt. 597, 599–600, 326 A.2d 166, 168 (1974). These safeguards adequately protect the state's interest in finality, and render the application of laches unncessary.

*The decision of the lower court is reversed. The cause is remanded for disposition on the merits.*

---

[3] Some states have responded to delay by holding that it affects the credibility of the movant. See, e.g., *In re McNair, supra,* — Mont. at —, 615 P.2d at 917–18; *Miller* v. *State, supra,* 603 S.W.2d at 30. We believe such a rule is unnecessary in Vermont.