NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 72

No. 2015-195

| | |
|---|---|
| In re D.C., Juvenile | Supreme Court |
| | On Appeal from Superior Court, Addison Unit, Civil Division |
| | April Term, 2016 |

Robert A. Mello, J.

Matthew Valerio, Defender General, and Marshall Pahl, Appellate Defender, Montpelier, for Appellant.

David R. Fenster, Addison County State's Attorney, and Ashley A. Hill, Deputy State's Attorney, Middlebury, for Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **DOOLEY, J.** Petitioner appeals the dismissal of a complaint for post-conviction relief (PCR) under 13 V.S.A. § 7131 alleging that the change-of-plea hearing that preceded his adjudication of juvenile delinquency was constitutionally inadequate. The superior court held that the PCR statute does not apply to juvenile delinquency proceedings and that the only remedy available to petitioner was through 33 V.S.A. § 5113 and Vermont Rule of Civil Procedure 60(b), but that route was foreclosed because petitioner's claim was untimely raised. On appeal, petitioner argues that the case is not moot, despite the fact he is over the age of majority and no longer committed to state custody, and that the PCR statutes permit juveniles to collaterally attack their adjudications. We agree, reverse the superior court's order dismissing petitioner's PCR complaint, and remand for further proceedings.

¶ 2. On January 10, 2012, petitioner, then fourteen-years old, was adjudicated delinquent on a charge of simple assault based on an admission of guilt. He was placed on juvenile probation until his eighteenth birthday, March 24, 2015. On March 23, 2015, petitioner filed a PCR petition under 13 V.S.A. § 7131, alleging that the change-of-plea hearing that preceded his adjudication was constitutionally inadequate, as the colloquy pursuant to Vermont Rule of Criminal Procedure 11, made applicable to delinquency actions by Vermont Rule for Family Proceedings 1(a), failed to establish a factual basis for his admission of guilt. In response, the State filed a motion to dismiss, arguing that a PCR proceeding pursuant to 13 V.S.A. § 7131 is not available in delinquency cases and the only avenue available for post-conviction review is 33 V.S.A. § 5113, and that even if the court had jurisdiction to consider a PCR petition under § 7131 in a juvenile matter, the plea colloquy in this case was sufficient.

¶ 3. The court granted the State's motion. In its decision, the court considered the relationship between the Vermont Rules of Criminal Procedure and the Juvenile Proceedings Act, 33 V.S.A. §§ 5101-5322, recognizing that "as with criminal cases, '[a] motion to withdraw an admission of delinquency [in a juvenile case] must be made prior to or within 30 days after the date of entry of an adjudication of delinquency.' " The court observed that, according to the 2009 Reporter's Notes for Rule for Family Proceedings 1(j), "the remedy [for plea withdrawal] after the 30-day period has passed would be a petition under 33 V.S.A. § 5532." All the statutes dealing with juvenile proceedings, including § 5532, were repealed in 2008 and replaced with a new Juvenile Proceedings Act. See 2007, No. 185 (Adj. Sess.), § 13 (effective Jan. 1, 2009); Reporter's Notes—2009 Emergency Amendment, V.R.F.P. 1. The court noted that "only one provision in chapters 51-53 represents a replacement" for § 5532, and quoted part of that provision:

> (a) An order of the court may be set aside in accordance with
> Rule 60 of the Vermont Rules of Civil Procedure.

2

(b) Upon motion of a party or the Court's own motion, the Court may amend, modify, set aside, or vacate an order on the grounds that a change in circumstances requires such action to serve the best interests of the child.

33 V.S.A. § 5113. Civil Procedure Rule 60 provides opportunity for relief from judgment or order for:

(a) Clerical mistakes. . . .

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be filed within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

¶ 4. The court stated that because more than thirty days had passed since petitioner's adjudication, he was barred from seeking relief under Family Rule 1(j), and that "his avenue for post-conviction relief is thus 33 V.S.A. § 5113." Because there had been no change in circumstances, the court determined petitioner was ineligible for relief under § 5113(b). As to § 5113(a), the court concluded that petitioner's argument was untimely under Civil Procedure Rule 60, as he did not file for relief "for more than three years after the adjudication, on the last possible day" and it was "unclear what relief could be granted," as petitioner was over the age of eighteen and no longer on probation. The court also noted, without any reasoning, that "the analysis would be the same under the 13 V.S.A. § 7131 PCR petition." This appeal followed.

¶ 5. On appeal, we consider the following arguments: (1) whether petitioner's PCR petition is moot because he is over eighteen and no longer in state custody; and (2) whether a

juvenile may use 13 V.S.A. § 7113 to collaterally attack an unconstitutional delinquency conviction, or a delinquency conviction based on a guilty plea that did not comply with Criminal Procedure Rule 11, or whether the juvenile must rely exclusively on 33 V.S.A. § 5113 for any post-conviction review challenge.[1]

¶ 6.     We evaluate motions to dismiss using the same standard as the superior court, affirming dismissal only if "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief.  In assessing the claims, we regard as true the complaint's well-pleaded factual allegations."  In re Russo, 2013 VT 35, ¶ 10, 193 Vt. 594, 72 A.3d 900 (quotation and citation omitted).  Questions of statutory interpretation are "pure question[s] of law that we review de novo."  In re Towne, 2013 VT 90, ¶ 5, 195 Vt. 42, 86 A.3d 429.

¶ 7.     We must begin by addressing the issue of mootness.  The State has raised it for the first time on appeal.  We agree, however, that the appellee can raise mootness at any time and normal rules of preservation do not apply.  Town of Charlotte v. Richmond, 158 Vt. 354, 357-58, 609 A.2d 638, 640 (1992) (noting questions relating to subject matter jurisdiction can be raised at any time).  As a result, we address the merits of the State's mootness argument.

¶ 8.     The State argues that even assuming the PCR statute applies, § 7131 "clearly requires a petitioner be in custody, under sentence."  Because petitioner is "no longer subject to custody or probation," as he reached the age of majority shortly after filing his complaint, his PCR is therefore moot.  The State further notes that while several courts in other states permit juvenile habeas corpus petitions after a juvenile is discharged, courts that have not found mootness have done so on the basis of "some form of ongoing harm to the petitioners."  Here, the State argues, because petitioner's supervision terminated and his juvenile record is not

---

[1] The State discusses the issue of the inapplicability of coram nobis as a form of relief in the instant case.  Although coram nobis was addressed by the superior court, it was not raised or argued by petitioner in his brief to this Court.  Accordingly, we decline to address it here.  In re Smith, Bell & Hauck Real Estate, Inc., 132 Vt. 295, 300, 318 A.2d 183, 187 (1974) (stating that "[i]ssues not briefed are waived").

public, he suffers no collateral consequences and his petition moot. We conclude that the State's arguments are meritless.

¶ 9. Our opinion in In re Chandler resolves the State's underlying contention that a PCR becomes moot when a petitioner is no longer in custody under sentence. 2013 VT 10, 193 Vt. 246, 67 A.3d 261. In Chandler, the petitioner filed a PCR under § 7131 on March 11, 2011 on the ground of ineffective assistance of counsel. The petitioner's conviction had been affirmed by this Court in January 2011, and the trial court had denied a request to modify his sentence of twenty-nine to thirty days in jail. He began serving his sentence on March 16, 2011, after the filing of the PCR petition. In July 2011, the State moved to dismiss the PCR complaint, contending the trial court lacked jurisdiction "because [the] petitioner was no longer in custody." The court agreed and dismissed the petition in February 2012. Id. ¶ 4. We reversed, holding that "when a petitioner moves under § 7131 to challenge a conviction while still in custody for that challenged conviction, the trial court possesses jurisdiction to hear the claim and the expiration of the custodial term will not render the cause moot." Id. ¶ 6. In reaching our conclusion, we noted this approach "accords with that adopted by the U.S. Supreme Court in considering the related federal habeas statutes," id. ¶ 13, as well as that of "many states" across the country, id. ¶ 18 (collecting cases). We noted that a new trial "may be the only relief that a court could ever afford [a] petitioner because a Vermont court lacks jurisdiction to directly address collateral consequences imposed by other jurisdictions." Id. ¶ 17.

¶ 10. Chandler directly controls this case with respect to mootness.[2] It squarely holds that whether a petitioner was in custody under sentence is determined when the PCR complaint is filed and not at a later date when custody may have ceased.

---

[2] The State has not argued that Chandler is distinguishable because the petitioner in that case could be retried if he prevailed in his PCR action, whereas petitioner here could not be retried because juvenile court jurisdiction over him has ended. Because PCR petitions are not subject to a statute of limitations, it is very often true that retrial, or trial in the case of a plea of

5

¶ 11. The State argues that the <u>Chandler</u> rule should not be applied to juvenile delinquency proceedings because the juvenile suffers no adverse collateral consequences from a delinquency adjudication once the juvenile reaches the age of majority. In <u>Chandler</u>, we drew on decisions of the U.S. Supreme Court holding that adverse collateral consequences of a criminal conviction are presumed and need not be proven in the individual case to avoid mootness. 2013 VT 10, ¶ 13. We recognize that the law may reduce the adverse collateral consequences of a juvenile conviction as compared with an adult conviction but nonetheless conclude that there are still significant collateral consequences such that the presumption should prevail.

¶ 12. The State argues that the adverse collateral consequences of a juvenile adjudication are nonexistent because the record is not public. We conclude that the State overstates this public access limitation. Although juvenile records are generally confidential, there are exceptions to confidentiality. A criminal court has access to juvenile delinquency records and can consider them in imposing a sentence on conviction of an adult crime. 33 V.S.A. § 5117(b)(1)(C). Similarly, the records are available to corrections officials who are preparing a presentence investigation report, determining placement, preparing a treatment plan, or supervising the juvenile after conviction of an adult crime and the parole board while considering parole for that crime. <u>Id</u>. § 5117(b)(1)(C), (G). They are available to state's attorneys and other law enforcement officers "in connection with record checks and other legal purposes." <u>Id</u>. § 5117(d). The family division can grant access to the juvenile records on a need to know basis. <u>Id</u>. § 5117(b)(1)(F). They can, with the court's permission, be used in certain instances in divorce or parentage actions. <u>Id</u>. § 5117(c). The fact of the conviction under certain circumstances is provided to the superintendent of a public school, or headmaster of a private school, which the juvenile is attending. <u>Id</u>. § 5118(c).

---

guilty, is practically unavailable. We do not believe that the presence or absence of an opportunity for a retrial bears on mootness such as to change the rule of <u>Chandler</u>.

6

¶ 13.    As petitioner argues, the limited access to the juvenile record is only part of the story.    The person with a delinquency adjudication can be required for certain purposes to disclose the fact of the conviction.    Petitioner's counsel has included examples in his brief—the adjudication must be disclosed by applicants to the military, facilities requiring government security clearance, and some colleges and universities; and it has the potential to result in expulsion, denial of firearms licenses in other states, and denial of public housing.    Even where the person with the juvenile conviction is not required by law to disclose, an honest response to a question, for example, from a prospective employer, requires disclosure.

¶ 14.    We note that the collateral consequences endured by juvenile offenders have led many of our sister states to conclude that PCRs and direct appeals brought by juveniles remain live controversies, even if they are brought after the juvenile has reached the age of majority or been released from state custody.    For example, in E.C. v. Virginia Department of Juvenile Justice, a juvenile adjudged delinquent of breaking and entering and intent to commit rape, who had been ordered to register as a sex offender, filed a petition for a writ of habeas corpus alleging his guilty plea had been unknowing and involuntary and was invalid because he had received ineffective assistance of counsel.    722 S.E.2d 827, 828 (Va. 2012).    The juvenile was released from parole supervision six days after the petition was filed.    The Commonwealth later moved to dismiss the petition on the grounds the circuit court "lacked jurisdiction to consider the petition because [the juvenile] was no longer under any form of detention."    Id. at 829.    The circuit court granted that motion, holding in part that even if jurisdiction continued, the case was moot as the juvenile "no longer was subject to confinement and, therefore, no order favorably affecting the duration of his confinement could be entered."    Id. at 831.

¶ 15.    The Virginia Supreme Court reversed.    The court began its analysis by noting the line of cases from the U.S. Supreme Court and other states holding that release from custody prior to adjudication of a PCR petition "does not automatically terminate the existence of an

actual controversy and render the case moot" where the petitioner "continues to suffer a concrete and continuing injury, which is a collateral consequence of the conviction." Id. (citing cases). The court observed the "substantial consequences" imposed on the juvenile as a result of his convictions and the requirement that he register as a sex offender—enhanced punishment resulting from prior convictions, prohibitions on owning or transporting a firearm, prohibitions on adopting or fostering children, restrictions on choice of school and employment, and reputational harm from viewing on the sex offender registry. Id. at 832-33.

¶ 16.    The court rejected the Commonwealth's argument that the "only relief" a court considering a habeas petition can grant is discharge from custody, thereby rendering the case moot. Id. at 833. The court observed that, setting aside the fact that, practically speaking, petitions are entertained and relief granted even when the relief will not result in discharge—for example, when a PCR court orders a new trial—the habeas corpus statutes are "remedial in nature and are to be liberally construed." Id. at 834. The court noted that if the Commonwealth's position was accepted, the department of juvenile justice could defeat any petition by releasing a juvenile upon notification that a complaint was filed, thus leaving juveniles with "no remedy to vindicate" their rights. Id. The court therefore concluded that the collateral consequences imposed on the juvenile were "sufficient to sustain a continued controversy" and reversed the dismissal of the action, concluding that "[i]f successful, the relief [the juvenile] seeks can be afforded by the court exercising its habeas corpus jurisdiction." Id. at 835. Other decisions are similar. See In re Rousselow, 341 N.W. 2d 760, 763 (Iowa 1983) (holding juvenile's appeal "not mooted simply because he or she has reached the age of majority" as contention and relief "remain[] real", as adjudication remains on permanent record and can be "introduced into evidence against [juvenile] at a sentencing proceeding after the conviction of a felony"); State v. Rodgers, 235 S.W.3d 92, 97-98 (Tenn. 2007) (rejecting state's argument that appeal by petitioner who reached age of nineteen before disposition was moot as

8

juvenile violations "may have a subsequent adverse effect"—such as being considered as sentence enhancement factors for adult convictions—and concluding appeal presents a "genuine and existing controversy" (quotation omitted)).

¶ 17. Therefore, we hold that petitioner's PCR case is not moot under Chandler. Accordingly, we proceed to the question of whether a juvenile can challenge a delinquency adjudication using the PCR statute.

¶ 18. In summary, petitioner argues that the PCR statute applies according to its terms and there is no indication that it is not applicable because of the availability of a different remedy in the Juvenile Proceedings Act. The State responds that 33 V.S.A. § 5113, which incorporates Civil Procedure Rule 60, is the "only provision[] that govern[s] the relief sought in these proceedings;" it suggests petitioner has pointed to no "deficiency in the available juvenile remedy provisions" but instead, rests his argument on a "preference for post-conviction relief proceedings."

¶ 19. There are really two questions here, and it is useful to analyze them separately: (1) whether in the absence of a remedy in the Juvenile Proceedings Act, the Post-Conviction Relief Act, 13 V.S.A. §§ 7131-7137, applies in the case of a juvenile delinquency adjudication; and (2) if so, whether the presence of a remedy in 33 V.S.A. § 5113 displaces the PCR remedy such that it is no longer available. Vermont adopted the PCR Act in 1966, as a "special statutory remedy in the nature of habeas corpus." In re Clark, 127 Vt. 555, 557, 255 A.2d 178, 180 (1969). It was patterned after the federal PCR statute, 28 U.S.C. § 2255. In re Stewart, 140 Vt. 351, 355, 438 A.2d 1106, 1107 (1981). The federal statute was intended to provide a remedy "identical in scope" to federal habeas corpus. Davis v. United States, 417 U.S. 333, 343 (1974). We described our PCR statute as a venue device "enacted to simplify the often cumbersome procedures associated with federal habeas corpus . . . [and] not designed to affect the availability of habeas relief." Stewart, 140 Vt. at 356, 438 A.2d at 1107-08 (citations omitted). The U.S.

Supreme Court has been clear that habeas corpus enjoys a place of primacy and prestige in

American law:

> We do well to bear in mind the extraordinary prestige of the Great Writ, habeas corpus ad subjiciendum, in Anglo-American jurisprudence: the most celebrated writ in the English law. It is a writ antecedent to statute, and throwing its root deep into the genius of our common law. It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal constraint or confinement. It is of immemorial antiquity, an instance of its use occurring in the thirty-third year of Edward I. Received into our own law in the colonial period, given explicit recognition in the Federal Constitution, incorporated in the first grant of federal court jurisdiction, habeas corpus was early confirmed by Chief Justice Marshall to be a great constitutional privilege. Only two Terms ago this Court had occasion to reaffirm the high place of the writ in our jurisprudence: We repeat what has been so truly said of the federal writ: there is no higher duty than to maintain it unimpaired, and unsuspended, save only in the cases specified in our Constitution.
>
> These are not extravagant oppressions. Behind them may be discerned the unceasing contest between personal liberty and government oppression. It is no accident that habeas corpus has time and again played a central role in national crises, wherein the claims of order and liberty clash most acutely, not only in England in the seventeenth century, but also in America from our very beginnings, and today. Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of the fundamental rights of personal liberty. For its function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment; if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release. Thus there is nothing novel in the fact that today habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.

Fay v. Noia, 372 U.S. 391, 399-402 (1963) (quotations and citations omitted), overruled in part

on other grounds by Wainwright v. Sykes, 433 U.S. 72 (1977); accord Shuttle v. Patrissi, 158 Vt.

127, 129-30, 605 A.2d 845, 847 (1992) (noting Vermont's Constitution guarantees writ " 'shall

in no case be suspended' " and that, while originally limited to situations resulting in immediate

release from custody, habeas corpus today protects "broad range of liberty interests" (quoting Vt. Const. ch. II, § 41)); Shequin v. Smith, 129 Vt. 578, 581, 285 A.2d 708, 710 (1971) ("While a legislature may regulate the procedure with respect to habeas corpus, and to some extent, the purposes for which it may be used, the writ may not be abrogated or its efficiency curtailed by legislative action.").

¶ 20.  In Stewart, we noted that the availability of habeas corpus relief had expanded both federally and in Vermont even before the enactment of post-conviction relief statutes:

> Like its counterpart in the federal system, our post-conviction relief has expanded in two distinct and important dimensions. First, the species of errors subject to collateral attack have increased.  Habeas corpus formerly protected against only "jurisdictional" defects in criminal judgments.  Relief is now available for a variety of errors that affect the validity of guilty verdicts.  Second, the "Great Writ" has expanded to encompass a wide range of relief, including remedies short of full release, and the scope of review itself is likewise broad.
>
> The expansion of habeas relief has largely occurred under the guise of modern post-conviction relief statutes, such as 13 V.S.A. § 7131 and 28 U.S.C. § 2255 (1976).  These statutes were enacted to simplify the often cumbersome procedures associated with habeas corpus.  Section 2255 was designed to distribute the federal habeas caseload evenly among the federal courts and to provide a more convenient forum for obtaining relevant records and witnesses . . . . Similarly, 13 V.S.A. § 7131 apportioned Vermont's habeas cases among the trial courts.  Thus, the modern statutes, including 13 V.S.A. § 7131, are venue devices, and are not designed to affect the availability of habeas relief.

Stewart, 140 Vt. at 356, 438 A.2d at 1107-08 (quotations, citations and internal alterations omitted).  In fact, liberalization of habeas corpus and adoption of the PCR remedy happened simultaneously.  Id.  Section 7131 permits a prisoner "who is in custody under sentence of a court" to move the court of the county where the sentence was imposed to "vacate, set aside, or correct the sentence" on the ground that the sentence was: imposed in violation of the laws or constitution of the State of Vermont or the United States, was imposed by a court without jurisdiction, exceeds the maximum authorized by law, or is "otherwise subject to collateral

11

attack." The basic issue before us is whether a juvenile delinquent can be a "prisoner" who is "in custody under sentence."

¶ 21. In analyzing this question, it is undisputed that if petitioner had been a criminally convicted adult under a sentence of probation, he would be considered a prisoner who was "in custody under sentence" and could bring a PCR action under § 7131. See State v. Wargo, 168 Vt. 231, 235, 719 A.2d 407, 409-10 (1998) (concluding probationer in custody under sentence "for purposes of . . . the PCR statute."). This conclusion does not end our inquiry because an order of the court in a delinquency proceeding cannot "be deemed a conviction of crime," 33 V.S.A. § 5202(a)(1)(A), and the purpose of the Juvenile Proceedings Act is to "remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior and to provide supervision, care, and rehabilitation," id. § 5101(a)(2). Thus, the argument is that a juvenile who has been found to have committed a delinquent act is not a "prisoner" and is not "under sentence," irrespective of the disposition sanction ordered by the court. Although under different PCR statute language,[3] a number of courts have adopted this view. See, e.g., In re Vincent K., 2 N.E.3d 506, 518-19 (Ill. App. Ct. 2013) (stating that because delinquent is neither "imprisoned in the penitentiary" nor "subject to proceedings which resulted in his or her conviction," plain language of PCR statute bars relief (quotation omitted)).

¶ 22. For a number of reasons, we conclude that the statute applies. First, we have interpreted the statute broadly. A good example is the circumstance of the adult version of the petitioner in this case—a person who is on probation and is not in jail. We consider such a person a "prisoner" and "under custody" even though not incarcerated as long as the person's conduct is "to some degree under the supervision or direction of judicial officers" or the person "may face the possibility of imminent incarceration without a formal trial or criminal

---

[3] Only a small number of states have PCR statutes modeled on 28 U.S.C. § 2255, and none of these states have addressed the question of whether the statute applies to juveniles who have been found to have committed a delinquent act.

conviction." In re Liberty, 154 Vt. 643, 644, 572 A.2d 1381, 1382 (1990) (mem.). Also supporting this broad reading is the U.S. Supreme Court's observation that "microscopic analysis of § 2255 surely shows that the statutory language is somewhat lacking in precision." Davis, 417 U.S. at 343.

¶ 23. Second, in view of the historical development of the PCR remedy, the question of whether the PCR remedy may apply actually has two parts: whether the PCR remedy may apply and whether the writ of habeas corpus may be available. At least with respect to whether relief may be available with respect to juvenile delinquency adjudications, habeas corpus does not have the limitations of PCR. It applies whenever a person is "restrained of his liberty by an officer or other person," not only to criminally convicted prisoners. 12 V.S.A. § 3952.[4] It applies, for example, where a juvenile is in the custody of the state under a judicial temporary care order in a child in need of care or supervision (CHINS) proceeding. See In re B.M.L., 137 Vt. 396, 398, 406 A.2d 383, 384 (1979), overruled in part on other grounds by In re A.S., 152 Vt. at 492, 567 A.2d at 1142. Many state courts have held that habeas corpus applies to challenge certain irregularities in juvenile delinquency proceedings. See, e.g., Robinson v. Shock, 667 S.W.2d 956, 958 (Ark. 1984); D.M. v. State, 84 So. 3d 1242, 1244 (Fla. Ct. App. 2012); State ex rel. J.D.W. v. Harris, 319 S.E.2d 815, 820 (W. Va. 1984).

¶ 24. We are reluctant to hold that habeas corpus, but not PCR, applies when reviewing delinquency adjudications. Our PCR statute was adopted to streamline procedural requirements and not to restrict habeas corpus rights. The substantive issue in this case, whether petitioner's plea complied with Criminal Procedure Rule 11, is commonly decided in PCR adjudications. See, e.g., In re Manning, 2016 VT 53, __ Vt. __, __ A.3d __; In re Manosh, 2014 VT 95, 197 Vt. 424, 108 A.3d 212; In re Hemingway, 2014 VT 42, 196 Vt. 384, 97 A.3d 896; In re Stocks, 2014

_____

[4] Habeas corpus is a common law writ, and the statutes do not define its entire scope. See In re A.S., 152 Vt. 487, 490, 567 A.2d 1139, 1141 (1989). Thus, its availability may be broader than the circumstances covered by the statutes.

VT 27, 196 Vt. 160, 94 A.3d 1143. To require the identical issue to be raised and decided in a habeas corpus proceeding is inconsistent with the reforms Vermont adopted in enacting the PCR statute.

¶ 25. The third reason is a broader explanation of the second. Although a delinquency adjudication is not a criminal conviction, a delinquency proceeding is substantively the same as a criminal proceeding. The juvenile must be charged with having committed a delinquent act, which "means an act designated a crime under the laws of this State, or of another state if the act occurred in another state, or under federal law." 33 V.S.A. § 5102(9). A delinquent child means "a child who has been adjudicated to have committed a delinquent act." Id. § 5102(10). With some exceptions, the Rules of Criminal Procedure govern delinquency proceedings. See V.R.F.P. 1(a)(1)-(2). These are, of course, the characteristics that form the bases of the decisions of the U.S. Supreme Court in In re Gault, 387 U.S. 1 (1967), and In re Winship, 397 U.S. 358 (1970), that the due process clause of the Fourteenth Amendment to the U.S. Constitution guarantees that many of the constitutional protections required in a criminal proceeding also apply in a delinquency action. In fact, petitioner is raising just such a procedural due process deficiency, based on the due process holding in Boykin v. Alabama, 395 U.S. 238 (1969), in bringing his PCR.

¶ 26. These rights are real only if there are adequate remedies to enforce them. This is the basis for the decision in State v. Doe, 34 P.3d 1110 (Idaho Ct. App. 2001), the decision from another jurisdiction we find most persuasive. In Doe, the defendant appealed a delinquency adjudication alleging that he was denied effective assistance of counsel in the delinquency proceeding. The court agreed that the defendant had to be given an opportunity "just like any adult would be, to challenge the effectiveness of his counsel." Id. at 1116. It found, however, that "any attempt to decide Doe's ineffective assistance of counsel claim on direct appeal would be, at best, conjectural." Id. at 1117. It noted, however, that under Idaho law the remedy of

14

habeas corpus would be available only if the defendant were confined to a juvenile correctional facility. Id.

¶ 27. In the absence of an alternative, the court turned to the Idaho PCR statute. Idaho had adopted the Uniform Post Conviction Procedures Act (UPCPA), which applies to any person "who has been convicted of, or sentenced for, a crime." Id. at 1118. Despite the language of the Act, the court held that the UPCPA applied: "After a thorough examination of the law of other jurisdictions, our statutory law, and our court rules, we hold that the most appropriate and effective procedural mechanism for a juvenile to bring an ineffective assistance of counsel claim is the UPCPA."[5]

¶ 28. For the above reasons, we answer the first question addressing the availability of a PCR remedy—whether a person adjudicated a juvenile delinquent may bring a PCR petition to challenge an admission of guilt based on due process and Criminal Procedure Rule 11—in the affirmative.[6] Therefore, we turn to the second question, whether the availability of PCR relief was impliedly eliminated by the enactment of 33 V.S.A. § 5113.

¶ 29. We hold that in this instance, the Legislature did not intend to replace relief for juveniles under 13 V.S.A. § 7131 with relief under 33 V.S.A. § 5113. Instead, it contemplated that the statutes would be interpreted harmoniously. We are guided in this conclusion by two primary considerations.

---

[5] Other states have applied the UPCPA to juvenile delinquency proceedings. For example, in Robinson v. Boley State School for Boys, the court held that the UPCPA applied to delinquency proceedings "founded on a violation of the criminal law." 554 P.2d 44, 46 (Okla. 1976). The Court held that petitioner should proceed under the UPCPA and not under habeas corpus because "the same rights must be afforded juvenile delinquents where committed for a violation of the penal code [as afforded to adult criminal defendants] in order to comply with the equal protection clause of the Fourteenth Amendment to the Constitution of the United States." Id.

[6] The superior court decision states that its analysis of why petitioner could not prevail under 33 V.S.A. § 5113 would also apply to 13 V.S.A. § 7131. Because the analysis of the applicability of § 5113 is almost entirely based on the timeliness of the petition, we assume that is also the ground for the inapplicability of § 7131. We have rejected above the position that the petition was untimely.

¶ 30.    First, it has long been the practice in Vermont that, absent explicit statements from the Legislature that a novel remedy is intended to be exclusive, we are to assume remedies are cumulative. "A statute instituting a new remedy for an existing right does not take away an existing remedy, unless by express words or necessary implication. In such cases, the new remedy is cumulative merely, and one injured may pursue it or the old one at his election." Town of Sharon v. Anahma Realty Corp., 97 Vt. 336, 341, 123 A. 192, 194 (1924) (citation omitted). Here, no such exclusionary language appears in the applicable statute. 33 V.S.A. § 5113(a) states that an order of a trial court "may be set aside in accordance with Rule 60 of the Vermont Rules of Civil Procedure." In turn, Civil Procedure Rule 60 states that a party may obtain relief on the ground of clerical mistakes, inadvertence, excusable neglect, fraud, and newly discovered evidence. However, it concludes with the following language:

> This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of bills of review are abolished as means of reopening judgments entered under these rules, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

V.R.C.P. 60(b).

¶ 31.    Although the rule specifically abolishes several common law writs, it does not eliminate, abrogate, or in any other way mention habeas corpus or PCR proceedings. As per the canon expressio unius est exclusion alterius, when a drafter itemizes "members of an associated group or series," we may justifiably infer that "items not mentioned were excluded by deliberate choice, not inadvertence." Barnhart v. Peabody Coal Co., 537 U.S. 149, 169 (2003) (quotation omitted). Thus, we conclude that § 7131 petitions are among the "independent action[s]" that may relieve a party from a judgment, order, or proceeding contemplated in the very text of Civil Procedure Rule 60.

16

¶ 32. Further, nothing in the text of Civil Procedure Rule 60(b) suggests that it is an exclusive remedy; the rule provides relief for instances where a sentence has been rendered despite clerical mistake, inadvertence, fraud, and the like—but specifically leaves available alternate "independent action[s]"—and where a change of circumstances has occurred. By its own terms therefore, the rule does not in any way indicate that the above grounds are the only means for collaterally challenging a juvenile adjudication.

¶ 33. Similarly, § 5113(b) provides that a court may "amend, modify, set aside, or vacate an order on the grounds that a change in circumstances requires such action to serve the best interests of the child." Section 5113(c) states that orders made under this section shall follow a notice and hearing, although a hearing may be waived by party stipulation, and that all helpful evidence may be admitted at said hearing. This section appears in the "General Provisions" of the Juvenile Proceedings Act and applies to all types of juvenile proceedings, including CHINS proceedings, which are entirely civil. In fact, we note that every decision from this Court that cites § 5113 or its predecessor 33 V.S.A. § 5532, now repealed, involves a CHINS proceeding and not a delinquency proceeding. Section 5113 was adopted in light of this history, and it makes sense that the Legislature would adopt the civil model for setting aside or modifying court orders. Part of this understanding may be that PCR or habeas corpus relief was available for delinquency cases.

¶ 34. Second, in arguing that 33 V.S.A. § 5113 supersedes 13 V.S.A. § 7131 with respect to juveniles, the State is essentially claiming that the PCR statute, as it pertains to juveniles, was repealed by implication. We note that in construing statutes, we "presume[] that no repeal by implication is intended" and will find implied repeal "only if (a) the acts are so far repugnant that they cannot stand together, or (b) are not so repugnant, but the later act covers the whole subject of the former and plainly shows it was intended as a substitute therefore." Vt. Tenants, Inc. v. Vt. Hous. Fin. Agency, 170 Vt. 77, 83, 742 A.2d 745, 749 (1999). Instead, we

17

prefer to "look for a construction that will harmonize the seemingly-inconsistent statutes." Id.; accord Hui v. Castaneda, 559 U.S. 799, 810 (2010) ("As we have emphasized, repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." (quotation omitted))

¶ 35. Here, neither prong of the implied repeal test applies. As demonstrated above, by their own text, the statutes are not exclusive. Moreover, the elements and scope of their afforded remedies differ. For example, § 7131 places no time constraint on when a collateral challenge can be brought; § 5331 is confined by the reasonable time requirement of Civil Procedure Rule 60. Most significantly, however, § 5113 does not provide the broad, constitutional guarantee that an individual may always obtain relief from unlawful governmental restraint. It relies on a civil rule of procedure and appears primarily intended to replace or supplement the equitable and statutory remedies available in civil practice. Accordingly, it has no provision by which a defendant can attack or a court can review an involuntary, unconstitutionally obtained plea or admission. Thus, our observation above that all cases relying on § 5113 or its predecessor are civil, either CHINS or termination of parental rights cases, is unsurprising.

¶ 36. Although there is "significant overlap" between § 5113 and § 7131, "that alone is insufficient to effect an implied repeal." State v. Foley, 140 Vt. 643, 648, 443 A.2d 452, 454 (1982). It is unlikely that the Legislature intended to replace the modern version of the ancient, constitutionally enshrined right of habeas corpus with a remedy best suited and exclusively used for civil cases.

¶ 37. Finally, we address the reliance of the superior court on the Reporter's Note to the 2009 Amendment to Family Procedure Rule 1(j). The Reporter's Note is advisory, explaining the intent behind the rule as it was presented to this Court. The rule provides for a motion to withdraw an admission of delinquency if made within thirty days. Nothing in this decision is

18

inconsistent with that intent, and nothing in the note addresses whether PCR relief is also available to a juvenile adjudicated a delinquent.

¶ 38.    Therefore, in consideration of the history and significance of the Great Writ, the construction of the applicable statutes, and case law from Vermont and other jurisdictions, we conclude that 33 V.S.A. § 5113 and Civil Procedure Rule 60 are not the sole avenues for relief from a juvenile court order.  Like other citizens of this state, juveniles have a constitutional right to petition for relief from unlawful restraint from the government, Vt. Const. ch. II, § 41, a right that does not evanesce simply due to "the condition of being a boy."  In re Gault, 387 U.S. at 28.

Reversed and remanded for proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice